1  Christopher J. Borders (SBN: 135901)
   Casey A. Hatton (SBN: 246081)
2  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
3  San Francisco, CA 94111
   Telephone:    415-362-6000
4  Facsimile:    415-834-9070

5  Attorneys for Plaintiff and Counter-Defendant
   INTERSTATE FIRE & CASUALTY COMPANY
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO/OAKLAND DIVISION

11  INTERSTATE FIRE & CASUALTY         )   Case No. CV 07-04943 MHP
    COMPANY,                           )
12                                     )   **MEMORANDUM OF LAW IN SUPPORT OF**
                    Plaintiff,         )   **INTERSTATE FIRE & CASUALTY**
13                                     )   **COMPANY'S  MOTION FOR SUMMARY**
         vs.                           )   **JUDGEMENT**
14                                     )
    UNITED NATIONAL INSURANCE          )   Date:        August 18, 2008
15  COMPANY, and DOES 1 - 10,          )   Time:          2:00 P.M.
                                       )   Courtroom:    15
16              Defendants.            )
                                       )   Complaint Filed:      August 21, 2007
17  ───────────────────────────────    )
    UNITED NATIONAL INSURANCE          )   Counterclaim Filed:   October 1, 2007
18  COMPANY,                           )
                                       )
19              Counterclaimant,       )
                                       )
20       vs.                           )
                                       )
21  INTERSTATE FIRE & CASUALTY         )
    COMPANY and ROES 1 - 10,           )
22                                     )
              Counter-Defendants.      )
23                                     )

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................. 2

    A.    The *Tracy* Action ................................................................................. 2

    B.    January 2006 Communications With Interstate and UNIC Regarding the *Tracy* Action ...................................................................................... 3

    C.    UNIC Disclaimed Coverage and Withdrew From Defense....................... 3

    D.    Settlement of the *Tracy* Action ............................................................ 4

    E.    Cirrus Purchased Successive Professional Liability Insurance Policies from Interstate and UNIC ..................................................................... 4

        1.    The UNIC Policy – January 27, 2006-2007............................... 4

        2.    The Interstate Policy – January 27, 2005-2006 ......................... 6

III.  STANDARDS OF REVIEW ............................................................................. 7

    A.    Summary Judgment Standards................................................................ 7

    B.    Insurance Contract Interpretation Principles ......................................... 8

    C.    Equitable Indemnity Principles............................................................... 9

IV.   LEGAL ARGUMENT ...................................................................................... 10

    A.    The UNIC Policy Provides Coverage for the *Tracy* Action .................. 10

        1.    The January Communications were not a "Claim" Under the UNIC Policy .......................................................................... 11

        2.    UNIC's 'Other Insurance' Provisions Do Not Void Coverage ...... 13

        3.    Other UNIC Defenses Do Not Bar Coverage ............................. 15

    B.    The Interstate Policy Does Not Provide Coverage for the *Tracy* Action ................... 16

    C.    UNIC is Obligated to Indemnity Interstate for Defense Costs and Indemnity Expenses Incurred on Behalf of Cirrus in the *Tracy* Action........................................ 16

V.    CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AIU Ins. Co. v. Superior Court,*
    51 Cal. 3d 807 (Cal. 1990)............................................................. 8, 9, 12, 13

*Allstate Ins. Co. v. Tankovich,*
    776 F.Supp. 1394 (N.D. Cal. 1991) ........................................................ 8

*American Continental Ins. Co. v. American Cas. Co. of Reading, Pa.*
    73 Cal.App.4th 508 (Cal.App. 1999) ........................................................ 9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................... 7

*Aydin Corp. v. First State Ins. Co.,*
    18 Cal.4th 1183 1193 (Cal. 1998)....................................................... 10, 17

*Bank of the W. v. Superior Court,*
    2 Cal. 4th 1254 ( Cal. 1992).............................................................. 8, 9

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.,*
    5 Cal. 4th 854 (Cal. 1993)............................................................... 8, 14

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ................................................................ 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...................................................................... 7, 8

*Fireman's Fund Ins. Co. v. Chasson,*
    207 Cal.App. 2d 801 (Cal. App. 1962).................................................... 14

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 65 Cal.App.4th 1279 ...................... 9

*Fremont Indem. Co., Inc. v. California Nat. Physician's Ins. Co.,*
    954 F.Supp. 1399 (C.D. Cal. 1997) ........................................................ 2

*Gasaway v. Northwestern Mut. Life Ins. Co.,*
    26 F.3d 957 (9th Cir.1994) ................................................................. 7

*Gray v. Zurich Ins. Co.,*
    65 Cal.2d 263 (Cal. 1966)................................................................. 9

*Hartford Acc. & Indem. v. Sequoia Ins. Co.,*
    211 Cal.App.3d 1285 (Cal.App. 1989) .................................................... 17

*Hartford Accident & Indemnity Co. v. Super. Ct.,*
    23 Cal.App. 4th 1774 (Cal.App. 1994).................................................... 14

*Haynes v. Farmers Ins. Exch.,*
    32 Cal.4th 1198 (Cal. 2004)............................................................... 13

*In re K F Dairies, Inc. & Affiliates,*
    224 F.3d 922 (9th Cir. 2000) .............................................................. 12

*MacKinnon v. Truck Ins. Exch.,*
    31 Cal. 4th 635 (2003) ..................................................................... 8

*Martin Marietta Corp. v. Ins. Co. of North America,*
    40 Cal.App.4th 1113 (Cal.App. 1995)..................................................... 12

ii

*Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*
    81 Cal.App.4th 1082 (Cal.App. 2000)................................................................ 9

*Merced Mutual Ins. Co. v. Mendez,*
    213 Cal.App.3d 41, 45 (Cal. App. 1989) ............................................................ 8

*Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal.App.4th 389 (Cal.App. 1997) .............. 10

*Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal.App.4th 389 (Cal.App. 1997).
    Interstate may also recover on an equitable indemnity claim where it provided a defense
    under a good faith belief of potential for coverage of the claim. *United Pac. Ins. Co. v
    Hanover Ins. Co.*, 217 Cal.App. 3rd 925, 937-938 (Cal.App. 1990)................................ 17

*Montrose Chem. Corp. v. Sup. Ct. (Canadian Universal Ins. Co., Inc.),*
    6 Cal. 4th 287 (Cal. 1993)................................................................ 9, 14

*Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.,*
    695 F.Supp. 469 (C.D. Cal. 1987) ...................................................... 11, 16

*National Union Fire Ins. Co. v. Argonaut Ins. Co.,*
    701 F.2d 95 (9th Cir.1983) ................................................................ 8

*Palmer v. Truck Ins. Exch.,*
    21 Cal. 4th 1109 (Cal. 1999)................................................................ 8

*Safeco Ins. Co. of America, et al. v. The Super. Ct. of Los Angeles County,* 140 Cal.App.4th
    874 (2006)............................................................................ 10, 16, 17

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co., et al.,*
    ---F. 3d ---, 2008 WL 2736012 (9th Cir., July 15, 2008)................................... 8

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir.1987) .............................................................. 7

*Travelers Casualty & Surety Co. v. Century Surety Co.,* 118 Cal.App.4th 1156 (Cal. App.
    2004)................................................................................... 10, 16

*Travelers Indem. Co. of Illinois v. Ins. Co. of North America,*
    213 F.3d 643, 1 (9th Cir. 2000) ............................................................ 1

*United Pac. Ins. Co. v. Hanover Ins. Co.,*
    217 Cal.App.3d 925 (Cal. App. 1990)..................................................... 2, 9

*United Services Automobile Assn. v. Alaska Ins. Co.,*
    94 Cal.App.4th 638 (Cal. App. 2001)..................................................... 10, 17

*Waller v. Truck Ins. Exch., Inc.,*
    11 Cal.4th 1 (Cal. 1995).................................................................... 8

*Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,*
    860 F.Supp. 1448 (C.D. Cal. 1993) ........................................................ 8

**Statutes**

28 U.S.C.
    § 1332..................................................................................... 1

28 U.S.C.
    § 1441(b)................................................................................. 1

Cal. Civ. Code
    § 1636..................................................................................... 8

Cal. Civ. Code
    § 1639..................................................................................... 8

iii

Cal. Civ. Code
   § 1641 ............................................................................................................................. 8

Cal. Civ. Code
   § 3287(a) ........................................................................................................................ 17

Cal. Civ. Code
   section 1638 ..................................................................................................................... 8

Cal. Civ. Code
   section 1644 ..................................................................................................................... 8

Fed. R. Civ. P.
   56(c) ........................................................................................................................... 1, 7

Fed. R. Civ. Proc.
   56(b) ................................................................................................................................. 8

Fed.R.Civ.P.
   56(a) ................................................................................................................................. 8

Fed.R.Civ.P.
   56(e) ................................................................................................................................. 7

Federal Rule of Civil Procedure
   section 56 ......................................................................................................................... 7

**Other Authorities**

Lee R. Russ & Thomas F. Segalla, Couch on Insurance, 3d § 217:5 (West 1999) .............................. 9

1    **I.    INTRODUCTION**

2        Pursuant to Fed.R.Civ. P. 56(c), plaintiff Interstate Fire & Casualty Company ("Interstate")

3    moves for summary judgment that defendant United National Insurance Company ("UNIC") owed a

4    duty to defend and a duty to indemnify the parties' mutual insured, Cirrus Medical Staffing, Inc.

5    ("Cirrus") regarding a wrongful death lawsuit titled *Tracy Lovelace Sandia Health Services, New*

6    *Mexico Second Jud. Dist., case no. CV-2005-07009* ("the *Tracy* Action").

7        Interstate seeks declaratory relief and damages under theories of equitable contribution and

8    equitable indemnity for defense costs and indemnity expenses it paid on behalf of Cirrus related to

9    the *Tracy* Action.  Interstate and UNIC issued successive professional liability policies to Cirrus,

10   with the Interstate policy expiring on January 27, 2006 and the UNIC policy taking effect on that

11   date. Both policies provided coverage only for claims made against the insured while each was in

12   effect.  Cirrus was added as a defendant and served with the *Tracy* Action on March 27, 2006, after

13   the Interstate policy expired and while the UNIC policy was in effect.  Cirrus demanded a defense

14   from both Interstate and UNIC.  Interstate accepted the tender under a reservation of rights in order

15   to protect Cirrus' interests, but UNIC wrongfully refused to participate in Cirrus' defense and

16   wrongfully refused to fund the entirety of Cirrus' eventual settlement of its liabilities for the *Tracy*

17   Action.   Interstate brings this action for reimbursement of the defense costs and indemnity expenses

18   it incurred on Cirrus' behalf.

19       Interstate brought this action against UNIC in Marin County Superior Court alleging claims

20   for indemnity, contribution and seeking damages and declaratory relief.  UNIC timely removed to

21   this court pursuant to 28 U.S.C. § 1441(b) on the basis of this court's diversity jurisdiction under 28

22   U.S.C. § 1332.

23       Federal courts sitting in diversity of jurisdiction apply the substantive laws of the state in

24   which the federal court is located.  *Travelers Indem. Co. of Illinois v. Ins. Co. of North America,* 213

25   F.3d 643, 1 (9th Cir. 2000) (applying California law to contribution dispute between insurers);

26   *Continental Cas. Co. v. Richmond,* 763 F.2nd 1076, 1079 (9th Cir. 1985).  California substantive law

27   regarding the equitable principles of indemnity applies in this matter.  *Fremont Indem. Co., Inc. v.*

28

1    *California Nat. Physician's Ins. Co.,* 954 F.Supp. 1399, 1400 (C.D. Cal. 1997).

2    **II.    STATEMENT OF RELEVANT FACTS**

3        **A.    The *Tracy* Action**

4        On April 22, 2004, Cirrus contracted with the Hospital Services Corporation to provide

5 medical staffing for the Lovelace Sandia Health Systems medical facility in Albuquerque, New

6 Mexico ("Lovelace Sandia"). (JSUF, ¶ 3, Ex. C). On August 16, 2004, Cathy Robinson entered into

7 a "Traveling Medical Professional Services Agreement" with Cirrus which provided that Robinson

8 would be employed by Cirrus as a traveling Registered Nurse. (JSUF, ¶ 4, Ex. D). Nurse Robinson

9 was assigned to work as a Registered Nurse at Lovelace Sandia in Albuquerque on August 30, 2004.

10 (JSUF, ¶ 5). On October 7, 2004, Lovelace Sandia patient Marilyn Trace died. (JSUF, ¶ 6).

11        On September 15, 2005, Marilyn Tracy's estate filed a lawsuit entitled *Ben Tracy, as*

12 *Personal Representative of the Estate of Marilyn Tracy, Deceased v. Lovelace Sandia Health d/b/a*

13 *Albuquerque Regional Medical Center* (the *Tracy* Action"). (JSUF, ¶ 7, Ex. E). Lovelace Sandia is

14 the only named defendant in the original complaint in the *Tracy* Action. (See, JSUF, Ex. E). Cirrus

15 is not a named defendant in the original complaint's allegations and neither Cirrus nor a Cirrus-

16 identified employee are mentioned by name in the complaint. (See, JSUF, Ex. E). The *Tracy* Action

17 complaint asserts a claim for wrongful death, caused by professional negligence. Id.

18        On March 21, 2006, the Tracy estate amended its complaint to name Cirrus as a defendant in

19 the action. (JSUF, ¶ 14, Ex. L). Cirrus was served with the First Amended Complaint on March 28,

20 2006. (JSUF, ¶ 15).

21        Interstate and UNIC each received a copy of the First Amended Complaint no later than

22 April 11, 2006. (JSUF, ¶ 16). On April 11, 2006, Jennifer Green of Interstate and Diane Cruz of

23 UNIC communicated regarding the First Amended Complaint and exchanged insurance policies and

24 contact information. (JSUF, ¶ 19, Ex. O). On April 11, 2006, Green assigned counsel to defend

25 Cirrus in the *Tracy* Action based on her good faith belief of a potential for coverage. (JSUF, ¶ 18,

26 Ex. N). *See United Pac. Ins. Co. v. Hanover Ins. Co.,* 217 Cal.App.3d 925, 937 - 938 (Cal. App.

27 1990) (a settling insurer with a good faith belief of a potential for coverage may obtain

28

reimbursement from a non-settling insurer whose policy in fact covered the claim).

**B.      January 2006 Communications With Interstate and UNIC Regarding the *Tracy* Action**

On January 4, 2006, Ellen Thorne Skrak, counsel for Lovelace Sandia wrote to Cirrus advising Cirrus of the *Tracy* Action and stating that, "I believe it is possible that opposing counsel, Pia Salazar, will be contacting you about how to accomplish service of process. She has expressed the intention to bring you into the case. Even if she decided not to do so, she will likely try to subpoena Ms. Robinson to give a deposition." (JSUF, ¶ 8, Ex. F). This communication appears to the first communication to Cirrus about the existence of the *Tracy* Action.

The following day, Skrak sent Cirrus a facsimile copy of the original complaint in the *Tracy* Action. (JSUF, ¶ 9, Ex. G). Also on January 5, 2006, Robert Watson of Watson Insurance Agency, Inc., prepared a "General Liability Notice of Occurrence/Claim" form. (JSUF, ¶ 10, Ex. H). On January 6, 2006, Terry Bellotti of Heath Care Insurers sent an e-mail to Interstate providing Watson's January 5, 2006 form and Skrak's January 4, 2006 correspondence. (JSUF, ¶ 11, Ex. I).

On January 10, 2006, Ms. Skrak sent Interstate a facsimile copy of the original complaint in the *Tracy* Action. (JSUF, ¶ 12, Ex. J).

On January 18, 2006, Bill Hanaway of Health Care Insurers sent e-mail correspondence to underwriter Cheryl Kleinke of UNIC (JSUF, ¶ 13, Ex. K) which advised UNIC of Skrak's letter regarding the *Tracy* Action, finding that it was not a "reported claim":

> We have current loss runs on file that presently show no reported claims.
> However, Cirrus has just been notified as of 1/6/06 by counsel of a hospital to
> warn that they may be contacted by a plaintiff's attorney, presently suing the
> hospital, because one of the nurses providing treatment was an employee
> of Cirrus being staffed to the hospital. The hospital's attorney advised that even
> if the plaintiff doesn't intend on going after Cirrus, they may at least want to
> subpoena and depose the nurse. *Id.*

Kleinke responded on January 20, 2006 informing Hanaway that he could "release terms per the attached revised rating worksheet." *Id*. Cirrus' UNIC policy took effect on January 27, 2006 when the Interstate policy expired.

**C.      UNIC Disclaimed Coverage and Withdrew From Defense**

On October 6, 2006, UNIC wrote to Cirrus agreeing to provide coverage for the *Tracy*

3

1   Action under a reservation of specific rights.  (JSUF, ¶ 23, Ex. S).  On February 13, 2007, UNIC

2   reversed this position and wrote to Cirrus stating that it had determined that no coverage exists for

3   the *Tracy* Action under the UNIC policy.  (JSUF, ¶ 24, Ex. U).

4       **D.      Settlement of the *Tracy* Action**

5           On March 19, 2007, Cirrus wrote to Interstate demanding that it settle the *Tracy* Action

6   within the policy limits.  (JSUF, ¶ 25, Ex. V).  On March 20, 2007, Cirrus wrote to UNIC

7   demanding that it participate in the settlement of the *Tracy* Action.  (JSUF, ¶ 27, Ex. X).  On March

8   21, 2007, Green and Cruz communicated regarding the global resolution of the *Tracy* Action. (JSUF,

9   ¶ 28, Ex. Y).  On May 23, 2007, Cirrus' liability for all claims in the *Tracy* Action were settled for a

10  total payment of $499,999 to the Plaintiffs, with Interstate contributing $399,999 of this amount and

11  UNIC contributing $100,000.  (JSUF, ¶ 30, Exhibit AA).  UNIC never acknowledged any obligation

12  to defend or indemnify Cirrus but contributed funds after demands by Cirrus and Interstate.  (JSUF,

13  ¶¶ 24, 27, 28, Exs. T, X, Y,).

14      **E.      Cirrus Purchased Successive Professional Liability Insurance Policies from
15              Interstate and UNIC**

16          **1.      The UNIC Policy – January 27, 2006-2007**

17          UNIC issued policy number AH-0000267 to Cirrus for the policy period January 27, 2006 to

18  January 27, 2007.  (JSUF, ¶ 2, Ex. B).  This claims-made liability policy was in effect when Cirrus

19  was named as a defendant on the *Tracy* Action and served the Amended Complaint.  The UNIC

20  policy contains the following policy provisions relevant to this motion:

21          SECTION I – PROFESSIONAL LIABILITY COVERAGE
22          1.      Insuring Agreement
            We will pay those sums that the insured becomes legally obligated to pay as
23          "compensatory damages" as a result of a "wrongful act". This insurance
            applies to injury only if a "claim" for damages to which no other insurance
24          applies, because of the injury is first made against the insured and reported to
            us during the "policy period".
25          a.      A "claim" by a person or organization seeking damages will be
                    deemed to have been made when notice of such "claim" is received
26                  and recorded by the insured or by us, which ever comes first; …
27          c.      We will have the right and duty to select counsel and to defend any
                    "suit" seeking damages.
28
                                                    4

SECTION II – "Claims" Expenses and Defense Costs
We will pay, with respect to any "claim" or "suit" we defend:
1.    All expenses we incur.
2.    All reasonable expenses incurred by the insured at our request to assist
      us in the investigation or defense of the "claim" or 'suit.
3.    All costs taxed against the insured in the "suit".
These payments will not reduce our limits of insurance. …

SECTION V – PROFESSIONAL LIABILITY CONDITIONS
                                …
4.    Other Insurance
If other valid and collectible insurance with any other insurer is available to
the insured a "claim" also covered hereunder (except insurance purchased to
apply in excess of the limit of liability hereunder), this insurance will be
excess of, and not contribute with, such insurance.  If the insured has other
coverage with us covering a "claim" also covered by this policy or Coverage
Part, the insured must elect which policy or Coverage Part will apply and we
will be liable under the Coverage Part so elected and will not be liable under
any other policy or Coverage Part.

SECTION VI – DEFINITIONS
                                …
4.    "Claim" means a written demand upon the insured for "compensatory
      damages", including, but not limited to, the services of "suite or
      institution of arbitration proceedings against the insured.  "Claim"
      includes reports of accidents, acts, errors, occurrences, offenses or
      omissions which may give rise to a "claim" under this policy. …
                                …
11.   "Suit" means a civil proceeding in which damages for injury to which
      this insurance applies are alleged. "Suit" includes an arbitration
      proceeding alleging such damages to which you must submit or submit
      with our consent. … .

**Claims Made Disclosure Form**
**Important Notice to Policyholders**
THIS DISCLOSURE FORM IS NOT YOUR POLICY, IT MERELY
DESCRIBES, IN SUMMARY FASHION, SOME OF THE MAJOR
FEATURES OF A CLAIMS' MADE POLICY FORM.  READ YOUR
POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT
IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR
POLICY DETERMINE THE SCOPE OF YOUR INSURANCE
PROTECTION. …
C.    Coverage is provided for liability if the claim for damage is <u>FIRST</u>
      <u>MADE</u> during the policy period for an event which occurred after the
      retroactive date and prior to the expiration date of the policy or
      extended reporting period.

5

2.    **The Interstate Policy – January 27, 2005-2006**

Interstate issued policy number ASC1000204 to named insured Cirrus Medical Staffing, LLC for the policy period January 27, 2005 through January 27, 2006. This policy was long expired when Cirrus was made a party to the *Tracy* Action. (JSUF, ¶ 1, Ex. A). The Interstate policy contains the following relevant provisions:

I.     COVERAGE

The Company will pay on behalf of the **Insured** all sums which the Insured shall become legally obligated to pay as **Damages** for **Claims** first made against the Insured and reported to the Company during the **Policy Period**, as a result of Bodily Injury, Property Damage or **Personal Injury** caused by an **Incident**, provided always that such **Incident** happens:

A.    on or after the policy effective date shown on the Declarations; or

B.    at any time prior to the policy effective date shown on the Declarations if:

    1.    such incident happens on or subsequent to the "prior acts date" on the Declarations, and

    2.    no Insured knew or could have reasonable foreseen that such Incident might be expected to be the basis of a Claim or Suit on the effective date of this policy.

The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** to which the insurance applies and the Company shall have the right and duty to defend any **Suit** against the **Insured** seeking **Damages** on account of such **Bodily Injury**, **Property Damage** or **Personal Injury**, even if any of the allegations of the **Suit** are groundless, false or fraudulent.

V.     POLICY PERIOD, TERRITORY

The insurance afforded by this policy applies to **Claims** which are first made and reported during the **Policy Period** for **Incidents** which occur anywhere in the world, provided **Claim** is made or **Suit**, if any is brought within the United States of America, its territories or possessions, or Canada.

VI.    WHEN CLAIM IS TO BE CONSIDERED AS FIRST MADE

A **Claim** shall be considered as being first made when the Company first receives written notice from the **Insured** advising that a **Claim** has been made and providing the details of the **Claim**.

All **Claims** arising out of the same or related **Incident** shall be considered as having been made at the time the first such **Claim** is made, and shall be subject to the same limit of liability and only a single deductible, if any, shall apply. …

IX.    DEFINITIONS

When used in this policy (including endorsement forming a part hereof):

"**Bodily Injury**" means bodily injury, sickness or disease, mental anguish, psychological injury or emotional distress sustained by any person, including death at any time resulting therefrom.

6

1
2
   "**Claim**" means a demand for money or the filing of **Suit** naming the **Insured** and, in either case, alleging a **Bodily Injury**, **Property Damage** or **Personal Injury** as a result of an **Incident**;

   "**Incident**" means any act or omission in the rendering of or failure to render services by the **Insured**, or by any person for whom the **Insured** is legally responsible, in the conduct of the business or professional occupation specified in the Declarations.

   "**Policy Period**" means, whenever used in this policy, the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any; ….

## III. STANDARDS OF REVIEW

### A. Summary Judgment Standards

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.*; *see also Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 959 - 960 (9th Cir.1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. *See National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95,

7

1  97 (9th Cir.1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the

2  moving party is entitled to judgment as a matter of law." *Celotex Corp., supra*, 477 U.S. at 323.

3       Upon a showing that there is no genuine issue of material fact as to particular claim(s) or

4  defense(s), the court may grant summary judgment in the party's favor "upon all or part thereof."

5  Fed.R.Civ.P. 56(a),(b); *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,* 860

6  F.Supp. 1448, 1450 (C.D. Cal. 1993)

7       The scope of coverage under a written insurance policy is solely a matter for judicial

8  interpretation, and insurer's duties under a policy are an issue amenable to resolution on summary

9  judgment. *Allstate Ins. Co. v. Tankovich*, 776 F.Supp. 1394, 1396 (N.D. Cal. 1991). *See also Waller*

10  *v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (Cal. 1995); *Merced Mutual Ins. Co. v. Mendez*, 213

11  Cal.App.3d 41, 45 (Cal. App. 1989).

12  **B.     Insurance Contract Interpretation Principles**

13       As set out recently by the Ninth Circuit in *Sony Computer Entertainment America, Inc. v.*

14  *American Home Assurance Co., et al.,* ---F. 3d ---, 2008 WL 2736012 (9th Cir., July 15, 2008), the

15  following principles of insurance contract interpretation apply:

16       Though insurance contracts have special features, the general rules of contract
    interpretation still apply in California. *Bank of the W. v. Superior Court*, 2
17   Cal. 4th 1254, 1264 ( Cal. 1992); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th
    635, 647 (2003). The interpretation of a contract must "give effect to the
18   'mutual intention' of the parties . . . at the time the contract was formed." *Id.*
    (citing Cal. Civ. Code § 1636). Such intent is to be inferred, if possible, from
19   the written provisions of the contract based on their "ordinary and popular
    sense," unless a "technical sense or special meaning is given to them by their
20   usage." *Id.* at 647-48 (citing Cal. Civ. Code §§ 1639, 1644, 1638). If the
    contractual language is clear and explicit, it governs. *AIU Ins. Co. v. Superior*
21   *Court*, 51 Cal. 3d 807, 822 (Cal. 1990).

22       The terms in an insurance policy must be read in context and in reference to
    the policy as a whole, with each clause helping to interpret the other. Cal.
23   Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins.*
    *Co.*, 5 Cal. 4th 854, 867 (Cal. 1993); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th
24   1109, 1115 (Cal. 1999). Accordingly, a provision is ambiguous "only if it is
    susceptible to two or more reasonable constructions despite the plain meaning
25   of its terms within the context of the policy as a whole." *Id.*; *see also Bank of*
    *the W.*, 2 Cal. 4th at 1265 ("'[L]anguage in a contract must be construed in the
26   context of the instrument as a whole, and in the circumstances of that case,
    and cannot be found to be ambiguous in the abstract.'") (quotation source and
27   emphasis omitted). A court faced with an argument for coverage based on an
    assertedly ambiguous policy language "must first attempt to determine

28

8

whether coverage is consistent with the insured's reasonable expectations," *id.*, and "[i]n so doing . . . must interpret the language in context, with regard to its intended function within the policy," *id.* [sic]  Thus, although unresolved ambiguities in insurance policies are generally construed against the insurer, *AIU Ins. Co.*, 51 Cal. 3d at 822, that principle only applies if the meaning of a term is ambiguous in light of the policy as a whole, and if coverage is within the objectively reasonable expectations of the insured.  *Bank of the W.*, 2 Cal. 4th at 1265.

*Sony*, at 3.

An insurer must provide a defense where the claims "*potentially* seeks damages within the coverage of the policy.  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (Cal. 1966), (emphasis in original).  The insurer need not defend only if the "complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage."  *Montrose Chem. Corp. v. Sup. Ct. (Canadian Universal Ins. Co., Inc.)*, 6 Cal. 4th 287, 300 (Cal. 1993).

## C.    Equitable Indemnity Principles

Equitable indemnification is available to a settling coinsurer who pays "a debt for which another is primarily liable, which in equity and good conscience should have been paid by the latter party.  *United Pac. Ins. Co. v. Hanover Ins. Co.*, 217 Cal.App.3d 925, 936 (Cal.App. 1990).  Equitable indemnification enables an insurer that has paid an obligation that was entirely the responsibility of a coinsurer to place the complete burden for the loss on that other party.  Lee R. Russ & Thomas F. Segalla, Couch on Insurance, 3d § 217:5 (West 1999).  Disputing insurers are treated as coinsurers and either may settle or defend the underlying claim and then seek equitable contribution or indemnity from the others who refused to settle or defend the claim.  *American Continental Ins. Co. v. American Cas. Co. of Reading, Pa.,* 73 Cal.App.4th 508 (Cal.App. 1999), 513; *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal.App.4th 1082 (Cal.App. 2000), 1088 - 1089.  The purpose of the rule "is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of the others."  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, (1998) 65 Cal.App.4th 1279, 1293 (Cal.App.1998)  No indemnitor should have any incentive to avoid paying a just claim in the hope that the claimant will obtain full payment from another co-indemnitor.  *Fireman's Fund, supra*, at 1295.

A settling insurer seeking equitable indemnity from a nonparticipating coinsurer need only

9

establish a "potential for coverage" under the recalcitrant coinsurer's policy in order to obtain reimbursement of those costs of defense and settlement. *Safeco Ins. Co. of America, et al. v. The Super. Ct. of Los Angeles County*, 140 Cal.App.4th 874, 879 (2006); *Travelers Casualty & Surety Co. v. Century Surety Co.*, 118 Cal.App.4th 1156, 1159 (2004). The settling insurer has met its burden of proof when it makes a *prima facie* case showing of "potential for coverage" under the nonparticipating insurer's policy; the burden then shifts to the nonparticipating insurer to prove the absence of actual coverage. *Safeco, supra,* at 881; *see also Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1193 (1998). By refusing to participate, the recalcitrant coinsurer waives its right to challenge the reasonableness of defense costs and settlement amounts because any other rule would render meaningless the insured's right to settle. *Safeco, supra,* at 881; *see also Travelers Casualty, supra, at* 1159; *United Services Automobile Assn. v. Alaska Ins. Co.*, 94 Cal.App.4th 638, 644 (Cal. App. 2001). An insurer may deny that settled claims were covered under its policy despite having agreed to indemnify. *Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal.App.4th 389, 394 (Cal.App. 1997).

## IV.   LEGAL ARGUMENT

### A.   The UNIC Policy Provides Coverage for the *Tracy* Action

The parties do not dispute that Cirrus was not a defendant to the *Tracy* Action until the Amended Complaint was filed and served on Cirrus in March 2006, during the UNIC policy period and after the Interstate policy period. (JSUF, ¶ 14, Ex. L). Given these undisputed facts, Interstate has met its burden of proof by setting forth a *prima facie* case showing a "potential for coverage" under UNIC's policy, shifting the burden to UNIC to prove the absence of actual coverage. *Safeco, supra,* 140 Cal.App.4th at 881; *Aydin Corp., supra,* 18 Cal. 4th at 1193.

Despite the undisputed potential for coverage, UNIC refused to defend Cirrus in the *Tracy* Action and, later, refused to contribute more than $100,000 to settlement of the *Tracy* Action. UNIC cannot meet its burden of proof to show no coverage to justify these actions. Its reasons for refusing to meet its contractual obligations are not perfectly clear, but appear to include a claim that the January 2006 communications between Cirrus and defense counsel in the *Tracy* Action preclude

coverage, and that the UNIC 'other insurance' provisions make the Interstate policy primarily responsible for the claim. UNIC may also claim that its indemnity obligation is limited by endorsement. UNIC misreads its policy and mischaracterizes the undisputed facts to reach these conclusions.

### 1.    The January Communications were not a "Claim" Under the UNIC Policy

The January 2006 communications between Cirrus and defense counsel in the *Tracy* Action are not, as a matter of law or fact, a "claim" made prior to the inception of the UNIC policy on January 27, 2006.

The UNIC policy defines "Claim", in pertinent part, as:

> [A] written demand upon the insured for 'compensatory damages', including, but not limited to, the service of 'suit' or institution of arbitration proceedings against the insured. 'Claim' includes reports of accidents, acts, errors, occurrences, offenses or omissions which may give rise to a 'claim' under this policy. (Emphasis added)

The first sentence of this definition is the ordinary and popular meaning of "claim": a demand for something as a right or as due. *See Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.*, 695 F.Supp. 469, 479 (C.D. Cal. 1987). The January 2006 communications were not "demands", were not by a claimant, did not seek damages, and were not part of a "suit" or other proceeding against Cirrus. Thus, the "ordinary and popular" meaning of "claim" is not met by Skrak's warning that the *Tracy* Action plaintiff may, possibly, sometime in the future, take steps to sue or subpoena Cirrus. Watson's "Notice of Claim" form was based on the Skrak letter and yields no different result; if the letter is not a claim, a notice based on the letter cannot change that fact. Therefore, the January 2006 communications do not meet either the ordinary and popular meaning of a "claim" or the UNIC definition of "claim."

UNIC may argue that the January 2006 communications meet the second sentence of the definition of "claim." This argument wrongly requires that the second sentence be read in a convoluted manner that violates insurance contract interpretations principles. Read standing alone, the second sentence of the definition appears to assert that a "claim" expressly includes something

11

1   that is *not* a claim – i.e., an occurrence, event, etc., that is not now a claim but may form the basis for

2   a claim that develops in the future.  Giving the second sentence this effect turns the ordinary and

3   popular meaning of "claim" on its head, changing it from meaning a demand for something as a right

4   or due, to an amorphous test of "knowledge" an occurrence or event that may or may not ever result

5   in such a demand.  Read divorced from the rest of the definition of "claim" and the policy (which

6   purports to be a claims-made policy rather than an occurrence-based policy), this second sentence

7   would have the absurd result of determining coverage based on an insured's knowledge that an event

8   or occurrence happened without any demand by a claimant.  An insured learning about a fire from

9   the evening news would be on notice of a "claim" when a third-party months later alleged that the

10  insured has some liability arising out of the fire.

11      Reading this second sentence divorced from the first should be rejected.  The sentence should

12  be read in accord with the doctrine of *ejusdem generis,* holding that general words following specific

13  words are construed to apply only to the same class of things initially specified.  *Martin Marietta*

14  *Corp. v. Ins. Co. of North America,* 40 Cal.App.4th 1113, 1124 (Cal.App. 1995); see also *Cahill v.*

15  *Liberty Mut. Ins. Co.,* 80 F.3d 336, 338, fn. 2 (9th Cir. 1996) (applying California law).  Since the

16  first sentence of the definition very specifically lists the elements of a "claim" the second sentence

17  can only reasonably be read to apply where those elements are met in the alternative form of a

18  "report" of an act or event.

19      Alternatively, the second sentence should be deemed ambiguous and the definition

20  interpreted in favor of coverage.  *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 926 (9th Cir.

21  2000) (ambiguities are "generally resolved in favor of coverage.").  Put simply, a "claim" cannot

22  also be expressly defined as something that is *not* a claim.  *AIU Ins. Co.*, *supra*, *at* 815 includes an

23  instructive discussion of how to address internally contradictory policy provisions.  *AIU* dealt with

24  the undefined policy term "damages" to determine if it included the costs of reimbursing the

25  government and complying with CERCLA clean-up orders.  *Id.* . at 814.  The insurers argued that

26  "damages" should not include the CERCLA compliance costs since "damages" refers only to a legal

27  requirement to pay and not an equitable or administrative order.  The court rejected this narrow,

28

12

1  technical reading, finding:

> 2  Defining "damages" as sums paid to third persons as a result of "legal claims"
> would render the policy language at issue here redundant as well as
> 3  inconsistent with an ordinary interpretation of the word "*damages*"; if the
> policies are construed in this manner, the phrase "legally obligated to pay"
> 4  would have no meaning not already expressed by the subsequent phrase
> providing coverage for "damages." Under established principles, we decline
> 5  to apply a definition that would create this result. *Id.*, at 827.

6  The court rejected an interpretation that would use the same substantive term twice in a single

7  definition as inherently ambiguous. The second sentence of the UNIC definition has the same fatal

8  flaw by using "claim" in the definition of "claim." Given this ambiguity, the only way to resolve the

9  ambiguity of the second sentence is to read it as being in the same class of the first sentence and

10  applying to reports of events that meet the criteria of the first sentence.

11      The court should also reject literal enforcement of the second sentence of the "claim"

12  definition as insufficiently conspicuous. *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204 (Cal.

13  2004) held that "to be enforceable, any provision that takes away or limits coverage reasonably

14  expected by an insured must be 'conspicuous, plain and clear'". Any provision limiting coverage

15  "must be placed and printed so that it will attract the reader's attention." *Id.* The second sentence of

16  the "claim" definition would be critically important to an insured since it voids the ordinary and

17  popular meaning of "claim" and transforms the policy into an occurrence-based coverage rather than

18  a claims-made coverage. Burying a sentence which dramatically changes the expected scope of

19  coverage deep in the definitions section of the policy is not sufficiently conspicuous to be

20  enforceable.

21          **2.     UNIC's 'Other Insurance' Provisions Do Not Void Coverage**

22      UNIC has asserted that its "other insurance" provisions void coverage for the *Tracy* Action

23  because the Interstate policy is "available." (JSUF ¶ 24, Ex. U). This argument sprouts from the

24  second sentence of the UNIC Insuring Agreement, which provides that the coverage "applies" only

25  where "no other insurance applies." (JSUF, ¶ 2, Ex. B, p. UNIC0534).

26      This argument fails. UNIC owed a defense to Cirrus for the *Tracy* Action because a claim

27  was plainly made during the UNIC policy period, and this obligation continued because UNIC never

28

1  succeeded in proving that it had no potential duty to indemnify Cirrus. *Montrose, supra, at* 300 (an

2  insurer is relieved from its duty to defend only where it proves that the "complaint can by no

3  conceivable theory raise a single issue which could bring it within the policy coverage."). The

4  undisputed facts created such a potential at the time of tender since the claim was made during the

5  UNIC policy period and after the Interstate policy period. (JSUF, ¶¶ 1 to 15). California law is clear

6  that UNIC's only way to defeat this potential is to secure a judicial finding that its policy does not

7  provide coverage. *Fireman's Fund Ins. Co. v. Chasson,* 207 Cal.App. 2d 801, 807 (Cal. App. 1962)

8  (an insurer's duty to defend ceases once it is determined in a declaratory relief action that the injury

9  sued upon is not covered); *Hartford Accident & Indemnity Co. v. Super. Ct.*, 23 Cal.App. 4th 1774,

10  1781 (Cal.App. 1994) ("the duty to defend begins when a potential for coverage arises, and

11  continues until the insurer proves otherwise."). It is undisputed that UNIC was aware that Cirrus

12  tendered its claim during UNIC's policy period and after Interstate's. It is also undisputed that

13  UNIC never attempted to terminate its duty to defend by pursuing a judicial finding that the policy

14  Interstate "applies" to the *Tracy* Action. A potential for coverage under UNIC's policy arose upon

15  tender and was never terminated.

16         UNIC's attempt to escape its obligations on this basis also fails because the Insuring

17  Agreement "applies" language is ambiguous for being in direct contradiction of the UNIC "other

18  insurance" condition, which states:

19          If other valid and collectible insurance with any other insurer is available to
20          the insured covering a "claim" also covered hereunder (except insurance
           purchased to apply in excess of the limit of liability hereunder), this insurance
21          will be excess of, and not contribute with, such insurance.

22  To the extent that the UNIC Insuring Agreement language purports to void the policy when any

23  other insurance "applies," the UNIC "Other Insurance" condition expressly contradicts this by

24  stating that other available insurance merely dictates *how* the UNIC policies applies. The court

25  should find as a matter of law that the Interstate policy does not "apply" for the reasons stated below,

26  but even if the court found that both policies potentially applied, these contradictory provisions in

27  the UNIC policy create an ambiguity. *Bay Cities Paving, supra, at* 867. These provisions are only

28

1  consistent and unambiguous if "applies" and "available" are consistently read to mean that coverage

2  under another insurance policy has been conceded by the other insurer or established by a court.

### 3.    Other UNIC Defenses Do Not Bar Coverage or Limit its Indemnity Obligation

UNIC also cannot meet its substantial burden to prove no coverage through any other defense

to coverage.  The *Tracy* Action plainly involves a tort claim based on the alleged professional

negligence of the insured or its employee made during the UNIC policy period, as required to trigger

the UNIC Insuring Agreement obligations. (JSUF, Ex. B, UNIC 0534).  UNIC cannot prove by

undisputed evidence that any professional liability policy exclusion bars coverage or that any policy

condition was unmet.

UNIC may claim, using hindsight, that Cirrus made a material misrepresentation in its

application for the UNIC policy because it did not respond as UNIC now says it should have to a

question in the policy application.  This argument is faulty on many levels.  First, it does not change

that a potential for coverage arose upon tender that was never terminated, obligating UNIC to

indemnify Interstate.  Second, the undisputed facts show that UNIC was in fact fully advised of

Skrak's letter during the course of underwriting of the UNIC policy.  (JSUF, ¶ 13, Ex. K, pp.

UNIC0726-727).  Wholesale broker Bill Hanaway told UNIC underwriter Cheryl Kleinke exactly

what letter had been received and what it said, and Kleinke responded by expressly authorizing

Hanaway to issue the policy on behalf of UNIC.  Lastly, for the reasons set forth above, the January

2006 communications were not a "claim" that required reporting.

UNIC may also claim that its indemnity obligation is limited to $100,000 by virtue of a

"Sexual or Physical Abuse" endorsement lowering the otherwise available limits for such claims.

(JSUF, Ex. B, UNIC (0547). This argument fails.  The *Tracy* Action claims were for medical and

professional negligence, not sexual or physical abuse.  (JSUF, Ex. E).  The complaint includes no

reference to sexual or physical abuse of the decedent.  UNIC has not and cannot present undisputed

facts that the *Tracy* Action arose *entirely* out of sexual or physical abuse notwithstanding the

complaint allegations to the contrary; absent such proof, the potential for coverage remains and

UNIC has not met its burden to prove no coverage.

15

**B.    The Interstate Policy Does Not Provide Coverage for the *Tracy* Action**

Just as the UNIC policy was obligated to defend and indemnify Cirrus, the Interstate claims-made policy was not. The Interstate policy applies only to "claims" "first made against the Insured and reported to the Company during the Policy Period." (JSUF, Ex. A, p. IFC 00161). A "claim" is defined as: "a demand for money or the filing of Suit naming the Insured and, in either case, alleging a Bodily Injury, Property Damage or Personal Injury as a result of an Incident." (JSUF, Ex. A, p. IFC 00165). The "policy period" is defined as the time from inception of the policy to expiration. (JSUF, Ex. A, p. IFC 00166). This definition clearly meets the ordinary and popular meaning of the word "claim." *See Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Co.*, 695 F. Supp. 469, 479 (C.D. Cal. 1987). The undisputed facts establish that there was no "claim" by Cirrus during the Interstate policy period. (JSUF, ¶ 8 to 16). The January 2006 communications did not meet any elements of a "claim" under either the ordinary and popular meaning or under the Interstate definition. A "claim" was not made until March 2006, over two months after the Interstate policy expired and during the effective period of the UNIC policy, and as a result, the Interstate policy did not apply to the claim.

**C.    UNIC is Obligated to Indemnify Interstate for Defense Costs and Indemnity Expenses Incurred on Behalf of Cirrus in the *Tracy* Action**

Because the UNIC policy terms created a potential for indemnity yet UNIC breached its obligations, and because Interstate had no such duty as a matter of law, UNIC should now be ordered to reimburse Interstate for the costs and expenses it incurred when UNIC refused to meet its obligations.

As reviewed above, a settling insurer seeking equitable contribution from a nonparticipating coinsurer need only establish a "potential for coverage" under the recalcitrant coinsurer's policy in order to obtain contribution for those costs of defense and settlement. *Safeco, supra, at* 879; *Travelers Casualty, supra, at* 1159. Interstate, as the settling insurer, has met its burden of proof by making a prima facie case showing of "potential for coverage" under UNIC's policy, shifting the burden to UNIC to prove the absence of actual coverage. *Safeco Ins. Co. of America, supra,* at 881;

1 | *see also Aydin*, *supra*, *at* 1193. The only ground UNIC ever raised to argue that it did not provide
2 | coverage was that the Interstate policy "applied" which has been shown by undisputed facts to be
3 | untrue. The UNIC policy plainly provides coverage for the claims against Cirrus in the *Tracy*
4 | *Action* as the claims against Cirrus are exactly within the terms of the insuring agreement and UNIC
5 | cannot meet its burden to demonstrate that coverage is otherwise barred by an exclusion.

6 | By its refusal to participate in Cirrus' defense, UNIC has waived its right to challenge the
7 | reasonableness of defense costs and settlement amounts because any other rule would render
8 | meaningless the insured's right to settle. *Safeco, supra*, at 880; *see also United Services, supra*, *at*
9 | 644. Interstate may deny that the Cirrus settlement was covered under its policy, despite having
10 | agreed to indemnify. *Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal.App.4th 389, 394
11 | (Cal.App. 1997).

12 | Interstate has met the *Safeco* and *Travelers* criteria as to its right to equitable indemnification
13 | for paying a debt rightly owed by UNIC. Interstate made a timely demand on UNIC for
14 | reimbursement of all costs (JSUF, ¶ 28, Ex. Y) and is now entitled to recover $399,000 in indemnity
15 | paid on behalf of Cirrus, defense costs in excess of $15,000[1] and interest at a rate of 7% per annum
16 | on both amounts. Interest at this rate is available pursuant to Cal. Civ. Code § 3287(a) as the loss is
17 | "certain or capable of being certain by calculation." *Hartford Acc. & Indem. v. Sequoia Ins. Co.*,
18 | 211 Cal.App.3d 1285, 1305 - 1306 (Cal.App. 1989).

19 | **V.    CONCLUSION**

20 | For the reasons set forth above, UNIC has not and cannot raise a valid defense to the
21 | allegations that it owed a duty to defend and/or indemnify Cirrus. UNIC cannot meet its burden to
22 | escape summary judgment as a matter of settled California law, and is obligated to reimburse
23 | Interstate for all costs of defense and settlement of the *Tracy* Action. Interstate respectfully requests
24 | ///
25 | ///
26 | ///
27 |
28 |

---

[1] An offer of proof will be made of the exact figure prior to entry of judgment.

1 | that its motion for summary judgment be granted as to all causes of action, and that judgment for

2 | $399,000 plus defense costs and interest to be proven be entered in its favor as a matter of law.

3 | DATED:  July 21, 2008                          Respectfully submitted,

4 |                                                HINSHAW & CULBERTSON LLP

5 |

6 |                                                /s/ *Christopher J. Borders*
                                                 /s/ *Casey A. Hatton*
7 |                                                CHRISTOPHER J. BORDERS
                                                 CASEY A. HATTON
8 |                                                Attorneys for Plaintiff and Counter-Defendants

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |