# EXHIBIT D
## TO JOINT STATEMENT OF
## UNDISPUTED FACTS

## TRAVELING MEDICAL PROFESSIONAL SERVICES AGREEMENT

THIS TRAVELING MEDICAL PROFESSIONAL SERVICES AGREEMENT ("Agreement") is made as of Aug 16, 2004, by and between Cirrus Medical Staffing, LLC (hereinafter called the "Company"), and the individual signing this Agreement, Cathy Robinson, ("Professional"). In consideration of the mutual covenants and promises made herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.    **Employment.** The Company employs Professional as a traveling medical professional commencing upon the first date written above and continuing until terminated as provided in this Agreement. Professional has accepted a professional assignment ("Assignment") at the facility ("Facility") and under other terms set forth in Exhibit A hereto and under the remaining terms and conditions set forth in this Agreement. Any extensions of the Assignment, or any additional time worked at Facility on a temporary or per diem basis beyond the end dates set forth in Exhibit A, will be worked by Professional only through Company. Professional's acceptance of this Assignment through the Company does not obligate the Company to offer or Professional to accept any future assignments that may be available through the Company. Professional will secure all state and other licenses necessary to perform services at the Facility prior to the starting date of the Assignment.

2.    **Duties.** Professional shall hold the position set forth in Exhibit A, and in such capacity shall be responsible for, among other duties, assuming and performing such duties and responsibilities consistent with such position and as shall otherwise be assigned to Professional by the Facility. Professional acknowledges that Professional has been informed of Professional's specific duties and that Professional understands the scope of such services. Professional agrees to provide to the Company health documents and other assignment-required documents reasonably requested by the Company and/or the Facility prior to Assignment start date.

3.    **Extent of Service.** Professional will work the full-time (36 hours or 40 hours depending on the shift) hours and any overtime schedule established by the Facility and will not perform work for another employer without advance written approval of the Company and the Facility. For all time Professional fails to work on a scheduled Facility shift, Professional will be liable to pay the Company a per hour fee in housing and benefit charges, as the Company may establish as its standard fees/charges from time to time. Missed shift time due to illness or approved time off may be made up during the Assignment only with Facility and Company approval. Professional shall devote Professional's best efforts as well as Professional's full time, attention and energy to the Assignment and duties, and will at all times during and after the Assignment conduct himself or herself in such a manner as to enhance the quality and image of Professional, the Facility and the Company. Professional will adhere strictly to the rules, policies and procedures of the Company and the Facility, and will follow all reasonable directions received from Facility management and supervision. The Company will not have any responsibility for the actions of Facility personnel during the course of the Assignment.

4.    **Outside Activities.** Professional shall not, during the term of the Assignment or any extension hereof, be engaged in any other business activity, whether or not such business activity is pursued for gain, profit, or pecuniary advantage. This provision shall not be construed as preventing Professional from personally, and for Professional's own account, trading in stocks, bonds, securities, real estate, commodities or other forms of investment for Professional's own benefit which do not require significant services by Professional.

5.    **Cash Compensation/Benefits.** Subject to the offset rights and other terms and conditions of this Agreement, Company will pay Professional at the rates set forth in Exhibit A for all authorized and properly documented time, and at the premium rate provided by state or federal law for all authorized and properly documented overtime worked for the Facility. The Company will provide to Professional the opportunity to participate in all benefit plans sponsored or provided during the term hereof by the Company

[Professional Initials: _CR_ ]

-1-

IFC00898

and covering the Company's traveling medical professionals generally, subject to the terms and conditions of such plans. Without limiting the foregoing, as a condition to any such eligibility, Professional must complete and timely return to the Company appropriate enrollment forms.

6.    **Expense Reimbursement**. The Company will reimburse Professional for travel expenses in relocating and other expenses as and at the rates set forth in Exhibit A, and other reasonable expenses pre-approved in writing by the Company. Professional shall account to the Company for such expenses in detail sufficient enough to enable the Company to properly document and deduct such expenses for federal income tax purposes. Such expenses shall be incurred only in accordance with such reasonable guidelines as may be established from time to time by the Company. Professional will be responsible for and will immediately return to the Company any and all reimbursement payments made by the Company to Professional in the event Professional fails to timely start or complete the Assignment, fails to work the hours required under this Agreement or Professional's engagement is terminated other than from a purely arbitrary termination by the Company or Facility. Professional agrees that reimbursements and stipends could be subject to federal and state employment and income taxes, depending on Professional's residency status, and agrees to promptly provide to the Company sufficient information and documentation to allow the Company to accurately report such payments. Professional agrees to release, indemnify and hold the Company harmless from any and all claims and liabilities related to such reporting.

7.    **Housing**. The Company will provide Professional with housing while at work on the Assignment (standard furniture included). Professional agrees to a monthly co-pay (if applicable) set forth in Exhibit A for this housing, to be deducted via payroll. Professional agrees to abide by and adhere to any and all Company and housing facility policies and regulations. Professional will pay to the Company upon its request and will otherwise make the Company whole for all charges, utility charges, cancellation costs, cleaning costs, repair costs, and other Company losses of such nature caused by or resulting from any of the actions or inactions of Professional described in Section 17(i)-(iv) below. Professional will pay all pet deposits and charges without reimbursement. Professional will also be solely responsible for cable and telephone connections and charges.

8.    **Consent to Testing**. Professional consents to such testing as required by the Company and further authorizes disclosure of the test results to the appropriate Company representative responsible for such testing and his/her designee; and in the event of a positive result, the medical review officer designated by the Company. Professional further indemnifies and holds harmless the Company and the Facility from and against the consequences of such disclosure. Professional understands that the test results will be used for determining Professional's eligibility for the Assignment at the Facility and future placements by the Company, and that this authorization and consent disclosure is only valid for a period of six months following its execution. Professional understands that Professional has a right to receive a copy of this authorization and consent disclosure upon request.

9.    **Agreement Not to Disclose**. Professional acknowledges that Professional's association with the Company will provide Professional with access to certain confidential information of the Company (the "Confidential Information"). Professional also acknowledges that disclosure of any Confidential Information could impair the Company's business relationship with the Company's customers and cause serious damage or injury to the business interests of the Company. Therefore, Professional agrees to not (i) disclose or permit the disclosure of the existence, content or substance of any Confidential Information to any person, firm, corporation, association or other entity for any purpose or reason whatsoever, without the prior written consent of the Company; (ii) copy or reproduce any of the Confidential Information; or (iii) remove any copyright notice, trademark notice, and/or other proprietary legend set forth on or within any Confidential Information. Professional also agrees not to disclose or permit the disclosure of any information about third parties that the Company and therefore Professional is obligated to keep confidential, and to otherwise maintain the confidential nature of the Confidential Information. The non-disclosure covenants contained herein shall not extend to any information that becomes known to both the public generally and to Professional through no fault of Professional.

[Professional Initials: _CRa_ ]

-2-

IFC00899

10.    **No Conflicting Obligations**. Professional represents, covenants and agrees that, (i) Professional's performance of this Agreement does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Professional prior to Professional's employment with Company, and (ii) Professional is not a party to any other agreement and is not bound to any other party in a manner which will or could reasonably be expected to interfere with Professional's full compliance with this Agreement. Professional will not enter into any agreement, whether written or oral, in conflict or inconsistent with the provisions of this Agreement. Professional agrees to indemnify and hold the Company harmless from and against any and all claims, demands, damages and other liabilities of any nature whatsoever against the Company related in any way to Professional's performance of services (or termination thereof) for any other party.

11.    **Enforcement and Damages**. Professional acknowledges that there is no adequate remedy at law to redress a breach or threatened breach of the covenants contained in this Agreement and therefore agrees that the Company shall be entitled to an injunction or other equitable relief against Professional restraining Professional from such breach and Professional waives any claim or defense that such enforcing party has an adequate remedy at law for any such breach; provided, however, that nothing contained in this Agreement shall prohibit the Company from pursuing any other remedies including damages, through judicial proceedings or otherwise. Professional agrees not to take any action which would prevent the enforcement by Company of the terms of this Agreement.

12.    **Termination**. Unless waived by the Company, this Agreement will terminate upon the earlier of: (i) the conclusion of the Assignment (including any extension thereof); (ii) the termination of Professional's Services by the Facility; (iii) the termination of the Facility's contract with the Company; (iv) notice of termination provided to Professional by the Company after evidence of or reasonably credible allegations against Professional of negligence, malpractice, tardiness, substance abuse, insubordination, material violation of Facility or Company policies; or (v) 14 days after written notice of termination from the Company for any other or no reason.

13.    **Oral Modification Not Binding**. This Agreement supersedes all prior agreements and understandings between the parties and may not be changed or terminated orally. No change or attempted waiver of the provisions hereof shall be binding unless it is in writing and signed by all parties. Professional is deemed to have agreed to all terms and conditions of this Agreement if Professional begins working on the Assignment, even if Professional fails to return a signed copy of this Agreement to the Company prior to its commencement. The Company's failure to require strict compliance with the terms and conditions of this Agreement shall not be deemed a waiver of such terms and conditions, nor shall the Company's failure to enforce any remedy it may have in that event preclude it from enforcing its remedy. Subtitles and section captions are inserted for convenience of reference and do not constitute part of the Agreement.

14.    **Miscellaneous**. This Agreement shall in all events be governed and interpreted under the laws of North Carolina, regardless of the location of Professional's residence, and regardless of where Professional's services are performed or where the Facility is located. Venue for any dispute hereunder shall be in state or federal court in Charlotte, North Carolina. Professional hereby irrevocably consents to such jurisdiction and venue and waives any right to object. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, heirs, and personal representatives. Any notice required or permitted to be given under this Agreement shall be sufficient if given in writing and sent by registered mail to the residence in the case of Professional or its principal office in the case of the Company. Each party hereto covenants and agrees that, both during and after the term hereof at the reasonable request of any other party and without further consideration, such party will provide information and data and execute and deliver such other documents or take such other actions as reasonably may be required to carry out in all respects this Agreement. The parties acknowledge that this Agreement has been entered into as a result of, among other things, the special skills of Professional, and agree that this Agreement may not be assigned or transferred by Professional, in whole or in part, without the prior written consent of the Company. The

[Professional Initials: _____]

-3-

IFC00900

Company shall have the right, in its sole discretion, to assign or to delegate any or all of its rights or obligations hereunder to any person or entity; provided, however, that the Company shall not be relieved of any of its obligations hereunder by such assignment. Professional shall pay all costs and expenses, including reasonable attorneys' fees, incurred by the Company in enforcing the provisions of this Agreement or in recovering any claims or damages arising from breach of this Agreement. The provisions of this Agreement are deemed by the parties to be severable, and the invalidity or unenforceability of any one or more of the provisions of this Agreement shall not affect the validity or enforceability of any other provision. Any and all payments of any nature made to or for the benefit of Professional are subject at all times to the right of offset by Company (in the Company's sole discretion) to the extent of any liabilities of Professional to Company hereunder, including without limitation housing and benefit charges owed and any liability of Professional under Section 17 below.

15.    **Representations and Warranties**. Professional further represents and warrants to the Company that all applications, consents, papers and other documents provided to the Company, and all statements and representations by Professional to the Company related to Professional's employment with the Company are true, complete and accurate in all respects.

16.    **Arbitration**. Except as specifically provided in this Agreement, any claim or controversy between the parties to this Agreement which arises out of or relates to the Agreement, the business of the Company, Professional's employment with Company, or any other relationship between Professional and the Company shall be settled in Mecklenburg County, North Carolina by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon an award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

17.    **Liability of Professional**. Without limiting any provision of this Agreement, Professional agrees to pay the Company upon its request, to make the Company whole for amounts equal to all financial losses, including without limitation all costs, expenses, fees, charges, legal fees, court costs, assessments, overhead costs, advances, deposits, lost revenues, reduced profits and other financial losses of any nature whatsoever (collectively, "Losses"), caused by, with respect to or related to:
(i) The failure of Professional to timely start or complete the Assignment,
(ii) Professional's failure to work the hours required in this Agreement,
(iii) The voluntary or involuntary termination of Professional (other than a purely arbitrary termination by the Facility or Company) or
(iv) Any other act, conduct, error, misrepresentation, failure to act, omission, negligence or misconduct of Professional.

IN WITNESS WHEREOF, the Company and Professional have executed this Agreement as of the day and year first above written.

PROFESSIONAL:                              COMPANY:

Contracted Professional                    Cirrus Medical Staffing, LLC

Signature: _Cathy Robinson_                By: _____ (SEAL)
Print Name: _Cathy Robinson_               Print Name: _Greg Allen_
State of Permanent Residency: _SD_         Title: _Pres't_

97131

[Professional Initials: _CR_ ]

-4-