JAMES C. NIELSEN (111889)
 jnielsen@nielsenhaley.com
THOMAS H. NIENOW (136454)
 tnienow@nielsenhaley.com
NIELSEN, HALEY & ABBOTT LLP
44 Montgomery Street, Suite 750
San Francisco, California 94104
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Defendant and Counterclaimant
UNITED NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY, | Action No.: C 07-04943 JL |
| Plaintiff, | UNITED'S NOTICE OF MOTION FOR SUMMARY JUDGMENT; |
| v. | MEMORANDUM. |
| UNITED NATIONAL INSURANCE COMPANY and DOES 1 through 10, | |
| Defendants. | |
| UNITED NATIONAL INSURANCE COMPANY, | Accompanying documents: |
| Counterclaimant, | 1. Joint statement of undisputed facts. |
| v. | 2. Declaration of Diane Cruz. |
| INTERSTATE FIRE & CASUALTY COMPANY and Roes 1 through 10, | 3. Declaration of Thomas Nienow. |
| Counterdefendants. | 3. [Proposed] order. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                              ii

NOTICE OF MOTION FOR SUMMARY JUDGMENT                                             1

MEMORANDUM OF POINTS AND AUTHORITIES                                              1

INTRODUCTION                                                                      1

UNDIPSUTED FACTS                                                                  3

1.   The policies.                                                               3

     A.   The common named insured, Cirrus Medical Staffing LLC                  3

     B.   The Interstate policy.                                                 4

     C.   The United policy.                                                     4

2.   The claim.                                                                  5

     A.   The *Tracy* wrongful-death complaint.                                  5

     B.   During Interstate's policy period, Cirrus receives the *Tracy* complaint
          naming its employee and is told that the *Tracy* plaintiff intends
          to sue Cirrus.                                                         6

     C.   The *Tracy* first amended complaint.                                   6

     D.   United reserves its right to disclaim.                                 7

     E.   United disclaims.                                                      7

     F.   The *Tracy* settlement.                                                8

3.   This insurance action.                                                      9

DISCUSSION                                                                        9

1.   California law applies because there is no conflict between the potentially
     applicable states' laws.                                                    9

2.   Where two insurers contest coverage for a common insured, they may
     jointly settle an action against the insured and then seek recoupment
     from each other in a subsequent action.                                     11

1    3.    Coverage was triggered only under the Interstate policy.                    12

2         A.    The *Tracy* action constituted a claim first made and reported during
               Interstate's policy period.                                          12
3
         B.    The *Tracy* action constituted a claim first made and reported before
4               the United policy began.                                            16

5         C.    United's prior-knowledge exclusion barred coverage for the *Tracy*
               action.                                                              16
6

7    CONCLUSION                                                                      18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

CASES

3

*American Cont. Ins. Co. v. PHICO Ins. Co.,*
4   132 N.C.App. 430, 512 S.E.2d 490 (1999) ............................................... 12, 14, 18

*Arno v. Club Med, Inc.,*
5   22 F.3d 1464 (9th Cir. 1994) ............................................... 11

6   *Battishill v. Farmers Alliance Ins. Co.,*
7   130 N.M. 24, 127 P.3d 1111 (2006) ............................................... 14

*Coregis Ins. Co. v. Camico Mut. Ins. Co.,*
8   959 F.Supp. 1213 (C.D. 1997) ............................................... 17

9   *Employers Mut. Liab. Ins. Co. v. Pacific Indem. Co.,*
10  167 Cal.App.2d 369, 334 P.2d 658 (1959) ............................................... 11

*Frontier Oil Corp. v. RLI Ins. Co.,*
11  153 Cal.App.4th 1436, 63 Cal.Rptr.3d 816 (2007) ............................................... 11

12  *Garamendi v. Industrial Trucking Service Corp.,*
13  131 Cal.App.4th 30, 31 Cal.Rptr.2d 395 (2005) ............................................... 14

14  *Gaston Mem. Hosp., Inc. v. The Virginia Ins. Reciprocal,*
    80 F.Supp.2d 549 (W.D.N.C. 1999) ............................................... 13, 14

15  *Helfand v. Nat'l Union Fire Ins. Co.,*
16  10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (1992) ............................................... 2

17  *McGhee v. Arabian Am. Oil Co.,*
    871 F.2d 1412 (9th Cir. 1989) ............................................... 9

18  *Merrill & Seeley, Inc. v. Admiral Ins. Co.,*
19  225 Cal.App.3d 624, 275 Cal.Rptr. 280 (1990) ............................................... 2

20  *Offshore Rental Co., Inc. v. Continental Oil Co.,*
    22 Cal.3d 157, 148 Cal.Rptr. 867 (1978) ............................................... 10

21  *Ohio Cas. Ins. Co. v. Harbor Ins. Co.,*
22  259 Cal.App.2d 207, 66 Cal.Rptr. 340 (1968) ............................................... 12

23  *Pension Trust Fund etc. v. Federal Ins. Co.,*
    307 F.3d 944 (9th Cir. 2002) ............................................... 13, 15

24  *R&R Sails, Inc. v. Insurance Co. of N. Am.,*
25  2008 U.S.Dist.LEXIS 30022 (S.D.Cal. 2008) ............................................... 11

26  *Register v. White,*
    358 N.C. 691, 599 S.E.2d 549 (2004) ............................................... 14

27  *Root v. American Equity Spec. Ins. Co.,*
28  130 Cal.App.4th 926, 30 Cal.Rptr.3d 631 (2005) ............................................... 15

*St. Paul Fire & Marine Ins. Co. v. Weiner*,
606 F.2d 864 (9th Cir. 1979)                                        9

*Strassberg v. New England Mut. Life Ins. Co.*,
575 F.2d 1363 (9th Cir. 1978)                                    10, 11

*Weddington v. United Nat'l Ins. Co.*,
2008 U.S.Dist.LEXIS 15610 (N.D.Cal. 2008)                          17

*Westrec Marina Mgmnt., Inc. v. Arrowood Indem. Co.*,
163 Cal.App.4th 1387, 78 Cal.Rptr.3d 264 (2008)        13, 14, 15, 16

*Williamson & Vollmer engineering, Inc. v. Sequoia Ins. Co.*,
64 Cal.App.3d 261, 134 Cal.Rptr. 427 (1976)                        13

*Winkler v. National Union Fire Ins. Co.*,
930 F.2d 1364 (9th Cir. 1991)                                      14

*Wisper Corp. v. Cal. Commerce Bank*,
49 Cal.App.4th 948, 57 Cal.Rptr.2d 151 (1996)                      18

STATUTES

Cal. Civ. Code § 1644                                              14

Cal. Civ. Code § 1646                                              11

Cal. Civ. Code § 3287(a)                                           18

Cal. Civ. Code § 3289(b)                                           18

MISCELLANEOUS

Croskey, et al., *California Practice Guide:  Insurance Litigation* (TRG 2005)      15

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

On August 18, 2008, at 2:00 p.m., in Courtroom 15 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, defendant and counterclaimant United National Insurance Company will and hereby does move the court under Fed.R.Civ.P. Rule 56 for summary judgment in its favor and against plaintiff and counterdefendant Interstate Fire & Casualty Company on Interstate's complaint and United's counterclaim or, if for any reason summary judgment cannot be granted, for partial summary judgment. The motion is made because the undisputed facts show that Interstate's claims-made-and-reported policy alone covered the alleged liability of Interstate's and United's insured, Cirrus Medical Staffing LLC, in underlying litigation styled *Tracy v. Lovelace-Sandia Health Services dba Albuquerque Regional Medical Center*, State of New Mexico, Second Judicial District, County of Bernalillo, No. CV 2005 07009. United is therefore entitled to judicial declarations in accordance with United's contentions in its counterclaim (or, if the court grants United concurrent motion for leave to amend, its amended counterclaim), judgment in United's favor on Interstate's complaint, and a money judgment against Interstate in the sum of $100,000, together with prejudgment interest at 10% from its payment on June 18, 2007.

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

This is an action between two liability insurance companies to determine which of them covered a now-settled claim against a common insured. The question before the court will turn on an issue of liability coverage purchased on a "claims-made" basis. To place the issue in context, it is important to distinguish between such claims-made insurance and the other type of liability insurance generally available, so-called "occurrence" coverage.

As this court has seen in other cases, "[o]ccurrence policies generally cover the insured for claims arising out of an occurrence that took place during the policy period,

1   even if the claim is made after the policy expires." *Merrill & Seeley, Inc. v. Admiral Ins.*
2   *Co.,* 225 Cal.App.3d 624, 628, 275 Cal.Rptr. 280 (1990).  Particularly in cases of
3   progressive or ongoing damages or injuries, such as pollution or toxic torts, occurrence-
4   based coverages can require every insurance company that issued a policy at any time
5   during the progression of the damage to respond to a claim years or even decades later.
6   *See, e.g., Montrose Chem. Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 42 Cal.Rptr.2d 324
7   (1995) (progressive pollution damage); *Armstrong World Indus. v. Aetna Cas. & Sur.*
8   *Co.,* 45 Cal.App.4th 1, 52 Cal.Rptr.2d 690 (1996) (progressive asbestos injuries).
9        Broad "occurrence" coverage has proven hugely expensive to insurers and,
10  ultimately, to policyholders.  Claims-made insurance was created to respond to that
11  expense by narrowing the scope of the risk and number of insurers on a given claim.  "A
12  claims-made policy usually provides coverage for prior errors or omissions so long as the
13  claim is made during the policy period." *Merrill & Seeley,* 225 Cal.App.3d at 628.  This
14  approach "provid[es] certainty in gauging potential liability which in turn leads to more
15  accurate calculation of reserves and premiums. The benefit to the insureds is that the
16  insurer can make coverage more available and cheaper than occurrence policies."
17  *Helfand v. Nat'l Union Fire Ins. Co.,* 10 Cal.App.4th 869, 888, 13 Cal.Rptr.2d 295 (1992)
18  (citations omitted).
19       In this instance, the common insured, Cirrus Medical Staffing LLC, bought
20  consecutive policies of such claims-made insurance for professional liability from plaintiff
21  Interstate Fire & Casualty Company and later from defendant United National Insurance
22  Company.  Cirrus, which is in the business of providing temporary medical personnel,
23  received a wrongful-death complaint alleging that one of its nurses had been negligent.
24  Cirrus tendered it to Interstate, whose policy was still in force.  After Interstate's policy
25  expired, the wrongful-death complaint was amended to specifically name Cirrus as a
26  defendant, and Cirrus's broker also notified United, which issued a later claims-made
27  policy.  Interstate provided a defense to Cirrus, but—without mentioning that Interstate
28  had received a notice of claim before United's policy was purchased—demanded that

1  United participate, and the two of them jointly settled the wrongful-death action for

2  Cirrus, with Interstate paying $399,000 and United $100,000.

3       Interstate has now sued United, asking the court to require United to reimburse it

4  for its settlement and defense payments in the wrongful-death action, even though

5  Interstate received the first notice of the wrongful-death claim while its policy was in

6  effect.  United has counterclaimed, contending that Interstate alone should have borne the

7  expense, and requesting that Interstate be required to reimburse the $100,000 that United

8  advanced.  As a matter of traditional policy interpretation and common sense, only one of

9  these claims-made insurers was responsible for the wrongful-death action, and the

10  policies' terms mandate that it be the one that received first notice of the claim while its

11  policy was still in effect—Interstate.

12       Based on stipulated facts, United now moves for summary judgment, and requests

13  a declaration that its policy did not apply and a money judgment for recoupment of its

14  contribution.

15

16                           **UNDISPUTED FACTS**

17  **1.     The policies.**

18  **A.     The common named insured, Cirrus Medical Staffing LLC.**

19       Interstate and United issued consecutive claims-made policies of professional-

20  liability insurance to Cirrus, which is in the business of providing temporary medical

21  personnel to medical facilities.  (Joint Statement of Undisputed Facts ["JSUF"] Nos. 1-3;

22  Exhs. 1-3.)  Cirrus is located in Charlotte, North Carolina, which is the address shown on

23  each of its policies, though it places its personnel all over the country.  (Exh. A, Form

24  DME-002(11/95) [Bates no. IFC00153]; Exh. B, Form SPA-108 (8/2004) [IFC00095] .)

25  Among its employees was Registered Nurse Cathy Robinson, who was assigned to work

26  with the Albuquerque Regional Medical Center in New Mexico.  (JSUF Nos. 4, 5, 33;

27  Exh. D.)  It was the conduct of Nurse Robinson that led to the underlying litigation.

28

1  **B.    The Interstate policy.**

2      Interstate issued a policy of professional-liability insurance to Cirrus effective from

3  January 27, 2005-2006.  (JSUF No. 1; Exh. A.)  The policy applies to "**Claims** first made

4  against the **Insured** and reported to the company during the **Policy Period,** as a result of

5  **Bodily Injury** ... caused by an **incident** ...."  (Exh. A, Form 01-PL-4002 (03/04), p. 1

6  [IFC00161].)  An "incident" is "any act or omission in the furnishing of health care

7  services to a patient ...."  (*Id*. at p. 5 [IFC00165].)  A "claim" is a "demand for money or

8  the filing of **Suit** naming the **Insured** ...."  (*Id*.)  The Interstate policy defines a "suit" as a

9  "civil proceeding in which **Damages** because of **Bodily Injury** ... to which this insurance

10  applies are alleged."  (*Id*. at p. 6 [IFC00166].)  The term "Damages" means

11  "compensatory judgments, settlement or awards ...."  (*Id*. at p. 5 [IFC00165].)

12      Under the Interstate policy, a claim is "considered as being first made when the

13  Company first receives written notice from the **Insured** advising that a **Claim** has been

14  made and providing the details of the **Claim**."  (*Id*. at p. 2 [IFC00162].)  Furthermore,

15  "[a]ll **Claims** arising out of the same or related **incident** shall be considered as having

16  been made at the time the first such **Claim** is made ...."  (*Id*.)

17      The term "Insured" includes "[a]ny current or former employee of the **Named**

18  **Insured**" while the employee is "acting on behalf of the **Named Insured**, and only within

19  the employee's duties as such ...."  (*Id*. at p. 2 [IFC 00162].)

20

21  **C.    The United policy**.

22      United issued a policy of professional liability insurance to Cirrus for the year

23  following Interstate's, January 27, 2006-2007.  (JSUF No. 2; Exh. B.)  The policy "applies

24  to injury only if a 'claim' for damages to which no other insurance applies, because of the

25  injury is first made against the insured and reported to us during the 'policy period.'"

26  (Exh. B, Form CPA-119 (2/2005), p. 1 [IFC00070].)  A "claim" is a "written demand

27  upon the insured for 'compensatory damages,' including, but not limited to, the service of

28  'suit' ... against the insured."  (*Id*. at p. 7 [IFC00076].)  Alternatively, a "claim" may be a

"report[] of accidents, acts, errors, occurrence, offenses or omissions which may give rise to a 'claim' under this policy." (*Id.*) There is no coverage under the United policy for "[a]ny 'claim,' 'suit' or 'wrongful act'[1] that might result in a 'claim' or 'suit' of which any insured had knowledge or could have reasonably foreseen, at the signing date of the application for this insurance." (*Id.* at p. 3 [IFC00072].)

Like the Interstate policy, the United policy states that "a 'claim' by a person or organization seeking damages will be deemed to have been made when notice of such 'claim' is received and recorded by the insured or by us, which ever comes first ...." (*Id.*, at p. 1 [IFC00070].) Additionally, "[a]ll 'claims' arising out of the same 'wrongful act' will be considered to have been made at the time the first 'claim' is made ...." (*Id.*)

The term "insured" in the United policy includes "[y]our current and former employees ....while acting within the scope of their duties on your behalf." (*Id.* at p. 4 [IFC00073].)

## 2.    The claim.

### A.    The *Tracy* wrongful-death complaint.

On September 14, 2005—over four months before Interstate's policy expired—Ben Tracy, personal representative of the Estate of Marilyn Tracy, filed an action styled *Tracy v. Lovelace-Sandia Health Services dba Albuquerque Regional Medical Center*, State of New Mexico, Second Judicial District, County of Bernalillo, No. CV 2005 07009. (JSUF No. 7; Exh. E.) The complaint alleged that Marilyn Tracy underwent abdominal surgery at a hospital operated by Lovelace-Sandia, known as the Albuquerque Regional Medical Center ("ARMC"), in October 2004. (Exh. E at p. 2 [IFC00455], ¶8.) The complaint alleges that medical staff, including Nurse Cathy Robinson—who was misidentified as an employee of ARMC—"negligently failed to inform the physician on call of Marilyn

---

[1] A "wrongful act" is "any act, error or omission in the furnishing of healthcare services to a patient or client ...." (Exh. B, Form CPA-119 (2/2005), at p. 7 [IFC00076].)

Tracy's status," which deteriorated after surgery. (*Id*. at p. 4, ¶19 [IFC00457].)  Days

later, Marilyn Tracy died, allegedly "[a]s a direct and proximate result of ARMC's

negligence, and its employees' …." (*Id.*, ¶20.)  The 2005 complaint prayed for

"compensatory damages." (*Id*. at p. 4 [IFC00457].)

**B.      During Interstate's policy period, Cirrus receives the *Tracy* complaint naming its employee and is told that the *Tracy* plaintiff intends to sue Cirrus.**

On January 4, 2006—some three weeks before Interstate's policy expired—

attorney Ellen Skrak, counsel for Lovelace-Sandia in the *Tracy* action, faxed Cirrus a

letter stating that "[y]our nurse, Cathy Robinson, was one of the nurses who cared for

Mrs. Tracy prior to her death." (JSUF No. 8, Exh. F.)  The letter also stated that

plaintiff's counsel had "expressed an intention to bring you into the case." (*Id.*)

A day later, Skrak sent Cirrus a copy of the *Tracy* complaint. (JSUF No. 9; Exh.

G.)  On the same day, Cirrus's agent (Watson Insurance Agency) prepared a "General

Liability Notice of Occurrence/Claim," stating "See attached letter received by insured

regarding medical malpractice issue." (JSUF No. 10; Exh. H.)  The notice of claim was

sent to an upstream insurance intermediary (broker Health Care Insurers), whose

employee Terry Bellotti sent an e-mail on January 6 to Interstate—specifically to Sheila

Robertson in Interstate's Claims Office. (JSUF No. 11; Exh. I.)  The e-mail stated

"[p]lease see attached *notice of claim* and letter from a lawyer office.  Contact Greg Allen

if you have any question." (*Id.*, italics added.)  On January 10, attorney Skrak followed up

by forwarding to Interstate a copy of the *Tracy* complaint itself. (JSUF No. 12; Exh. J.)

**C.      The *Tracy* first amended complaint.**

On March 21, 2006, the plaintiff in the *Tracy* action filed a first amended

complaint. (JSUF No. 14; Exh. L.)  Cirrus was served with it on or about March 28.

(JSUF No. 15.)  It alleged that Nurse Robinson was employed by Cirrus "and was acting

within the scope and course of her employment at all material times." (Exh. L at p. 2, ¶7

[IFC00469].)  It repeated the original allegations of medical malpractice and alleged that

1    Cirrus, through Robinson, "failed to monitor Marilyn Tracy's fluid status, vital signs and

2    oxygen saturation," and, as a result, "Marilyn Tracy was allowed to deteriorate, become

3    unresponsive and die ...." (*Id.* at p. 6, ¶32 [IFC00473].)

4         By April 11, 2006, both Interstate and United had received copies of the first

5    amended complaint. (JSUF No. 16.) On that day, Diane Cruz of United sent a letter to

6    Allen of Cirrus advising, among other things, that "[a]t present time we have insufficient

7    information to properly evaluate coverage afforded to Cirrus as a result of the above

8    notice[d] lawsuit." (JSUF No. 17; Exh. Q.) At the time—and until after Interstate sued

9    United here—Cruz knew nothing of the agent's January 6 notice of claim to Interstate or

10    attorney Skrak's January 10 fax to Interstate attaching the *Tracy* complaint. (Cruz Decl.,

11    ¶¶3, 4.) Also on April 11, Interstate by itself retained counsel to defend Cirrus in the

12    *Tracy* action. (JSUF No. 18; Exh. N.)

13

14    **D.    United reserves its right to disclaim.**

15         On October 6, 2006, Cruz—still unaware of the earlier notice of claim—wrote to

16    Cirrus that "[b]ased on the facts, as we presently understand them, coverage is afforded

17    pursuant to a strict reservation of rights." (JSUF No. 23; Exh. S.) After quoting various

18    policy provisions and summarizing the pleading, the letter stated that "[i]t is our

19    understanding that Interstate Fire & Casualty Company is providing you with a defense

20    under a reservation of rights," and thus, the United policy "will respond as excess

21    coverage to the Interstate policy subject to the conditions previously outlined and

22    contained within the policy." (Exh. S at p. 8 [IFC00008].) Cruz also stated that Untied

23    National reserved the "right to reevaluate coverage on any alternative and/or additional

24    basis in the event that factual evidence develops or is presented as relates to you or your

25    practice." (*Id.*)

26

27    **E.    United disclaims.**

28         On February 13, 2007, Cruz wrote to Cirrus that United had "determined that there

1   is no coverage under the policy for the claim for at least the reasons discussed below."

2   (JSUF No. 24, Exh. U.)  Cruz noted that United's insuring agreement provides that the

3   policy will "apply only to a claim for damages to which no other insurance applies ...,"

4   and that Interstate "has been handling the defense of this matter under a ... claims made

5   policy ... for the period of 01/27/2005-01/26/2006."  (Exh. U, p. 1 [IFC00011].)  Because

6   the Interstate policy "applies to damages for claims first made against the insured and

7   reported to the company during the policy period," and because the United policy did not

8   incept until later, "there is no coverage for this claim under the United National policy."

9   (*Id.* at p. 2 [IFC00012.].)

10          The next month, Interstate's counsel of record here wrote to Cruz that United's

11   position was "not supported by the established facts," and that "Interstate's business

12   decision to provide a defense under a reservation of rights does not establish any facts,

13   particularly not the fact of when a claim was first made."  (JSUF No. 26; Exh. W.)

14   Counsel's letter omitted the existence of the agent's January 6 notice of claim to Interstate

15   or attorney Skrak's January 10 fax to Interstate attaching the *Tracy* complaint.  (*Id.*)  The

16   next day, Greg Allen of Cirrus—apparently unaware of or not recalling those facts and

17   instead referring to the amended complaint was served—wrote to Cruz that "United was

18   indeed the insurance carrier for Cirrus ... during the date the above claim was made

19   (March, 06) ...."  (JUSF No.27; Exh. X.)

20

21   **F.      The *Tracy* settlement.**

22          On March 23, 2007, the *Tracy* action settled as to Cirrus for $499,000.  Interstate

23   agreed to pay $399,999 of this amount and United agreed to pay $100,000.  (JUSF No. 30;

24   Exh. AA.)

25          A week later, Cruz wrote to Allen explaining that "[a]s previously indicated, under

26   the terms of the United National policy, there is no coverage under the United National

27   policy for this claim.  Nevertheless, in an effort to facilitate an amicable resolution of the

28

1    underlying claim, United agreed to participate in the settlement without waiver of any of

2    its rights." (JUSF No. 31; Exh. BB.)

3         The same day, Cruz wrote a letter to Interstate's counsel advising that United "has

4    communicated its coverage position to Interstate and the policyholder.," that United "has

5    specifically reserved all of its rights and waived none," that "despite the fact that United

6    has disclaimed coverage" it has "offered to contribute $100,000 toward the settlement of

7    the underlying claim," and that "[n]othing in this letter is intended to be, nor should it be

8    construed as, a waiver of any rights United may have under the policy or applicable law."

9    (JSUF No. 32; Exh. CC.)

10        United made its payment under the agreement on June 18, 2007. (Nienow Decl.,

11   Exh. EE.)

12

13   **3.     This insurance action.**

14        In its counterclaim United seeks a declaration that its policy did not cover Cirrus's

15   alleged liability in the underlying action, while Interstate's policy did, so that United is

16   entitled to recoup its settlement contribution from Interstate. Interstate, on the other hand,

17   asserts that United's policy covered the *Tracy* action and, thus, United is required to

18   reimburse Interstate.

19

20                          **DISCUSSION**

21   **1.     California law applies because there is no conflict between the**

22          **potentially applicable states' laws.**

23        Because this action was removed from state court under the court's diversity

24   jurisdiction, California substantive law applies unless California's choice-of-law rules

25   dictate the application of law from another state. *St. Paul Fire & Marine Ins. Co. v.*

26   *Weiner*, 606 F.2d 864, 867 (9th Cir. 1979). The proponent of foreign law bears the

27   burden to prove its applicability. *McGhee v. Arabian Am. Oil. Co.*, 871 F.2d 1412, 1422

28   (9th Cir. 1989)

California applies two tests for choice-of-law determination. First, the "governmental-interest test" requires the court to "first consider the actual stake that the potentially concerned states have in the litigation." *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1363, 1364 (9th Cir. 1978). This is accomplished by examining whether the interests a foreign law is "designed to protect will be significantly furthered by its application to the case at hand." *Id.* If application of the foreign state's law will not "significantly advance the interests of a foreign state," then the conflict is deemed "false" and California law, which is generally preferred, applies. *Id.* A "true" conflict arises only when both California and the foreign states have a strong interest in application of their own law, which then requires an examination of the "'comparative impairment' to each states' interest of the choice of one rule over the other." *Id.* But "[w]hen one of two states involved has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied." *Offshore Rental Co., Inc. v. Continental Oil Co.*, 22 Cal.3d 157, 163, 148 Cal.Rptr.867 (1978).

Here, the action is between Pennsylvania and Illinois insurers, involving an underlying New Mexico lawsuit that was brought against the parties' common insured, a citizen of North Carolina. Because this action will not affect the rights of the underlying plaintiff, New Mexico appears to have no interest in the outcome. Nor does it appear that the states of which the insurers are citizens have an interest in how the respective payments related to the underlying actions are reallocated, because reallocation will not affect the public policy or the interests of people of those states. But because reallocating the payments under the two policies might affect the interests of the insured, North Carolina might have an interest in the outcome. As explained within, however, there is no conflict between California and North Carolina law on the issues upon which this action turns, either because the cases harmonize or North Carolina has not ruled on a particular subject. Under the governmental-interest test, then, the court should apply California law.

In contract cases, a second choice-of-law test may also apply under Cal. Civ. Code

1    § 1646, which states that "[a] contract is to be interpreted according to the law and usage

2    of the place where it is to be performed; or if it does not indicate a place of performance,

3    according to the law and usage of the place where it is made."[2]   Under § 1646, the parties'

4    intention can be "gleaned from the nature of the contract and the surrounding

5    circumstances, even if the contract does not expressly specify a place of performance."

6    *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1450, 63 Cal.Rptr.3d 816

7    (2007).  Here, both policies list Cirrus locations in dozens of states, including New

8    Mexico.  As to litigation in New Mexico, the parties may have anticipated performance in

9    that state, and under *Frontier*, § 1646 may call for conflicts to be resolved in favor of New

10   Mexico law.  As with North Carolina, however, there is no conflict because New Mexico

11   law is either silent or in accord with California law as to the issues here.  Under § 1646,

12   then, the Court should apply California law.

13

14   **2.    Where two insurers contest coverage for a common insured, they**
     **may jointly settle an action against the insured and then seek**
15   **recoupment from each other in a subsequent action.**

16         Where two insurers assert that they do not cover the alleged liability of a common

17   insured, California law permits them to join in a reasonable settlement and to "'have

18   judicially determined thereafter the truth or falsity of [each insurer's] representation of

19   noncoverage.'"  *Employers Mut. Liab. Ins. Co. v. Pacific Indem. Co.*, 167 Cal.App.2d

20

     ─────────────────────

21   [2] The Ninth Circuit has noted an apparent conflict between the government-interest test

22   and § 1646 in cases involving contracts.  *See, e.g., Arno v. Club Med. Inc.*, 22 F.3d 1464,
     1468-1469 n. 6 (9th Cir. 1994) (applying governmental-interest test because "[t]here

23   appears to be some difference of opinion as to whether California's choice of law rule for
     contracts is the governmental interest test ... or the test of Cal. Civ. Code § 1646'");

24   *Strassberg*, 575 F.2d at 1263 ("California conflicts law has developed significantly since

25   the original enactment of California Civil Code § 1646," and, thus, "California law [has]
     moved away from a mechanical choice of law process to employ the 'government interest

26   analysis'").  Thus, as in *R & R Sails, Inc. v. Insurance Co. of N. Am.*, 2008

27   U.S.Dist.LEXIS 30022 (S.D. Cal. 2008), we have analyzed the choice-of-law issues under
     both tests.

28

1  369, 380, 334 P.2d 658 (1959).  Where an insurer reserves its rights to recover from

2  another insurer, the rule that a volunteer may not recover payment of an obligation it

3  claims not to owe is inapplicable.  *Ohio Cas. Ins. Co. v. Harbor Ins. Co.*, 259 Cal.App.2d

4  207, 217, 66 Cal.Rptr. 340 (1968).  Moreover, "[t]he law does not require a writing to

5  preserve rights between insurers when intent to do so is manifest from the surrounding

6  circumstances and conduct of the parties." 259 Cal.App.2d  at 218.  United, therefore, is

7  entitled to recover its settlement contribution from Interstate upon showing that

8  Interstate's policy alone covered Cirrus's alleged liability in the *Tracy* action.[3]

9

10 **3.      Coverage was triggered only under the Interstate policy.**

11         The conduct of Nurse Robinson constituted an "incident" and "wrongful acts"

12 under the Interstate and United policies, respectively.  And both policies share the same

13 "retroactive date" of June 1, 2002 (after which an incident or wrongful act must have

14 taken place), a condition satisfied because the plaintiff's decedent in *Tracy* was treated

15 and died in October 2004.[4]  (Exh A, Form 01-PL-2001 (01/04) [IFC00149]; Exh. B, Form

16 DPA-127 (8/2004) [IFC00069].)  Neither insurer disputes these points.

17         Thus, whether the Interstate policy or the United policy covered Cirrus in the *Tracy*

18 action depends upon the trigger of coverage—that is, when a claim was made—or the

19 prior-knowledge exclusion in the United policy.  As explained, under either approach,

20 only the Interstate policy applied, and the Court should grant United's motion for

21 _____

22 [3] *See also, American Cont. Ins. Co. v. PHICO Ins. Co.*, 132 N.C.App. 430, 512 S.E.2d 490
   (1999) (deciding declaratory-judgment action between issuers of seriatim claims-made-
23 and-reported policies to common insured).  Our research has not disclosed any New
   Mexico law addressing rights of recovery between insurers of a common insured.
24

25 [4] The Interstate policy provides that if an "incident" happens before the inception date,
   then it must happen "subsequent to the 'prior acts date'" of June 1, 2002.  (Exh. A, Form
26 01-PL-4002 (03/04) [IFC00161].)  Similarly, the United National policy provides that the
   insurance does not apply to injury that was caused by a "'wrongful act' ... committed
27 before the Retroactive Date" of June 1, 2002.  (Exh. B, Form CPA-199 (2/2005)
   [IFC00070].)
28

1    summary judgment.

2    **A.    The *Tracy* action constituted a claim first made and reported during**
3    **Interstate's policy period.**

4    In the context of a claims-made-and-reported policy, "notice is the event that

5    actually triggers coverage." *Pension Trust Fund etc. v. Federal Ins. Co.*, 307 F.3d 944,

6    956-957 (9th Cir. 2002). [5]    The Interstate policy defines a claim as a "demand for money."

7    (Exh. A., Form 01-PL-4002 (03/04), p.5 [IFC00165].)    "The ordinary meaning of

8    'demand' as used in this context is a request for something under an assertion of right or

9    an insistence on some course of action." *Westrec Marina Mgmnt., Inc. v. Arrowood*

10    *Indem. Co.*, 163 Cal.App.4th 1387, 1392, 78 Cal.Rptr.3d 264 (2008).    Under California

11    law, therefore, notice from a lawyer of an intention to sue or assert a legal right constitutes

12    a "demand" for the purposes of triggering coverage under a claims-made-and-reported

13    policy, even if the letter does not "expressly demand payment or refer to any specific

14    amount ...." *Westrec*, 163 Cal.App.4th at 1393; *see also Williamson & Vollmer*

15    *Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal.App.3d 261, 268, 134 Cal.Rptr. 427 (1976)

16    (letter advising that 'there are major deficiencies in the air distribution system on this

17    project [caused by the insured] and, therefore, we must hold your firm responsible for

18    correcting the condition" constituted a claim).    By contrast, "[a] mere request for an

19    explanation, expression of dissatisfaction, or lodging of a grievance that falls short of such

20    an insistence is not a demand." *Westrec*, 163 Cal.App.4th at 1392.

21    Here, during the Interstate policy period, both Cirrus and Interstate were notified

22    that a lawsuit had been filed for the death of Marilyn Tracy, that Cirrus's employee was

23    identified by name in the lawsuit as legally responsible, and that plaintiff intended to hold

24    Cirrus liable.    The letter and complaint together constituted more than a vague expression

---

25    [5] *See also, Gaston Mem. Hosp. Inc. v. The Virginia Ins. Reciprocal*, 80 F.Supp.2d 549,
26    553 (W.D.N.C. 1999) (under claims-made-and-reported policy, coverage is afforded for a
27    claim "only if said claims was 'first made' and 'reported' to [the insurer] during the ...
      policy period").    Our research has not disclosed any New Mexico decision addressing this
28    point.

1    to "'take whatever legal action necessary to recoup their supposed losses," *Winkler v.*

2    *National Union Fire Ins. Co.*, 930 F.2d 1364, 1366 (9th Cir. 1991), nor were these

3    communications mere expressions of dissatisfaction or the lodging of a grievance against

4    Cirrus. Rather, they were assertions of "insistence upon a course of action" and

5    constituted a demand for the *Tracy* plaintiff's alleged compensatory damages from Cirrus.

6    *Westrec*, 163 Cal.App.4th at 1392. These communications were thus a "claim" under the

7    Interstate policy's definition of that term. *Westrec*, 163 Cal.App.4th at 1393.[6]

8          The Interstate policy also defines a claim as the "filing of **Suit** naming the

9    **Insured**." (Exh. A., Form 01-PL-4002 (03/04), p.5 [IFC00165].) The policy does not

10   define the term "naming." But the "words of a contract are to be understood in their

11   ordinary and popular sense, rather than according to their strict legal meaning ...." Cal.

12   Civ. Code § 1644.[7] The test, therefore, is "*not* what the insurer or its attorneys intended

13

---

14   [6] Neither New Mexico nor North Carolina has established a meaning for the term
     "demand" in the context of a claims-made-and-reported policy. But *Gaston Mem. Hosp.,*
15   *Inc. v. The Virginia Ins. Recip.*, 80 F.Supp.2d 549, 554 (W.D.N.C. 1999), found that an
     attorney's request to a hospital for medical records of a client would not, by itself,
16   constitute a "claim," defined as "'a demand received by an Insured for money ....'" This
     construction of the term "claim," while not considering the meaning of "demand," accords
17   with California law because, under the reasoning of *Westrec*, a request for medical records
     is only an inquiry or, at most, an "expression of dissatisfaction," which falls short of
18   "insistence upon a course of action." *Westrec*, 163 Cal.App.4th at 1392. *See also,*
19   *American Cont. v. PHICO*, 512 S.E.2d at 493 (while not construing "demand," holding
20   that an attorney's request for medical records alone was not a "claim" because there was
     no 'express demand for damages'" until the claimants filed suit). The demand
21   communicated to Cirrus here supplied the element missing from *American Cont.*, because
22   the *Tracy* complaint included an express demand for damages arising from the negligence
23   of Cirrus's employee.

24   [7] *See also Battishill v. Farmers Alliance Ins. Co.*, 130 N.M. 24, 26, 127 P.3d 1111 (2006)
25   (terms of an insurance policy "'must be interpreted in [their] usual, ordinary, and popular
     sense'"); *Garamendi v. Industrial Trucking Service Corp.*, 131 Cal.App.4th 30, 42, 31
26   Cal.Rptr.2d 395 (2005) ("The plain meaning of the policy language is 'the meaning a
27   layperson would ordinarily attach to it'"); *Register v. White*, 358 N.C. 691, 695, 599
     S.E.2d 549 (2004) ("In interpreting the language of an insurance policy, courts must
28   examine the policy from the point of view of a reasonable insured").

1   the policy to mean but what a *reasonable person in the position of the insured would have*

2   *understood* the words to mean." Croskey et al., *Cal. Practice Guide: Insurance*

3   *Litigation,* ¶4:14 at p. 4-6 (TRG Rev. #1 2005) (italics original).

4         In everyday usage, the verb "to name" means to "[a]ssign a specified, proper name

5   to" or "to refer to by name ...." *See,* www.websters-online-dictionary.org. The original

6   *Tracy* complaint referred by name to Cirrus's employee, Nurse Cathy Robinson, and the

7   complaint was thus a suit "naming" her. Robinson, who acted in the course and scope of

8   her employment, qualified as an insured. Thus, the complaint named the insured

9   Robinson and the alternate definition of "claim" in the Interstate policy was also satisfied

10  during its policy period. *See, e.g., Root v. American Equity Spec. Ins. Co.,* 130

11  Cal.App.4th 926, 933, 30 Cal.Rptr.3d 631 (2005) ("reasonable insureds might very well

12  deduce that the mere filing of a suit against them, even without their knowledge, is a

13  'claim' under the policy").

14        Since, during the Interstate policy period, both Cirrus and Interstate received notice

15  of the demand conveyed by attorney Skrak and the complaint naming Nurse Robinson,

16  coverage was triggered under the Interstate policy. *Pension Trust,* 307 F.3d at 956-957.

17  Under the Interstate policy all claims "arising out of the same or related **incident** shall be

18  considered as having been made at the time the first **Claim** is made ...." (Exh A,

19  form 01-PL-4002 (03/04), p. 2 [IFC00172].) The original and amended *Tracy* complaints

20  alleged the same acts of "professional health care services" by Robinson as having caused

21  Marilyn Tracy's death. (Exhs. E, L.) Because both the original demand to Cirrus, the

22  original complaint, and the subsequent amended complaint arise out of the "same or

23  related acts," they are all deemed to be a claim first made at the time of the original notice

24  during Interstate's policy period. *Westrec,* 163 Cal.App.3d at 1396 ("[t]he Clark lawsuit

25  and the Adams letter constituted a single claim," and, where letter was received by insured

26  during first policy period, insured's "notice of the lawsuit during the second policy period

27  concerned the same claim ....")

28

**B.    The *Tracy* action constituted a claim first made and reported before the United policy began.**

The United policy applies "*only* if a 'claim' … is *first* made against the insured and reported to us during the 'policy period.'" (Exh. B, Form CPA-119 (2/2005), p. 1 [IFC00070].) Thus, the claim must have been *first* made *after* United's policy began on January 27, 2006, in order for coverage to attach. The policy defines a "claim" as a "written demand upon the insured for 'compensatory damages,'" or, alternatively, a "report[] of accidents, errors, occurrence, offenses or omissions which may give rise to a 'claim' under this policy." (Exh. B, Form CPA-119 (2/2005), p. 7 [IFC00070].)

As under the Interstate policy, the letter to Cirrus advising that it was to be sued, was more than an expression of dissatisfaction or an inquiry—it was an assertion of a right and course of action against Cirrus. *Westrec*, 163 Cal.App.3d at 1396. And the *Tracy* complaint expressly demanded compensatory damages for Nurse Robinson's alleged wrongful acts, constituting a "claim" under the United policy. *Root*. The pre-policy demand thus met the policy's first definition of "claim."

The demand to Cirrus also met the alternate definition of "claim"—a report of conduct "which may give rise to a 'claim'"—because the letter and complaint advised Cirrus of the conduct of its employee, Nurse Robinson, that could give rise to a suit against Cirrus. (Exhs. E-J.)

Under either definition, the claim was first made before United's policy began. United's policy never applied to the *Tracy* action.

**C.    United's prior-knowledge exclusion barred coverage for the *Tracy* action.**

The United policy excludes coverage for "[a]ny 'claim,' 'suit' or 'wrongful act' that might result in a 'claim' or 'suit,' of which any insured had knowledge or could have reasonably foreseen at the signing date of the application for this insurance." (Exh. B, Form CPA-119 (2/2005), p. 3 [IFC00072].) Greg Allen of Cirrus signed the application for the United policy on January 23, 2006, 19 days after Skrak had written to him and told

1  him that plaintiff intended to sue him and 18 days after he had received the *Tracy*

2  complaint detailing Robinson's alleged negligence and demanding compensatory

3  damages. (JSUF No. 34; Exh. DD.) Cirrus, thus, had actual knowledge of the claim at

4  the time Allen signed the policy application. The prior-knowledge exclusion

5  unambiguously applies.

6       Additionally, Cirrus necessarily must have foreseen, at the time Allen signed the

7  application, that a suit against Cirrus could have resulted from Nurse Robinson's alleged

8  wrongful acts, implicating the "reasonably foreseen" clause of the exclusion as a matter of

9  law. For example, in *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F.Supp. 1213, 1222

10  (C.D. 1997), two insurers issued consecutive claims-made policies to an accountant for

11  professional negligence. During the first period, the insured was sued for professional

12  negligence, but the complaint was amended during the second period to expand the

13  alleged negligence. The first insurer defended and settled the lawsuit, while the second

14  sued for a declaration of no coverage. The district court in *Coregis* granted summary

15  judgment for the second insurer on the basis, among others, that its policy excluded

16  coverage for a claim based on prior acts if, when the second policy began, the insured

17  "knew or could have reasonably foreseen that such act, error or omission might be

18  expected to be the basis of a CLAIM or suit." *Id.* at 1221. The court found it

19  "inconceivable" that the insured could *not* have "known or reasonably foreseen that his

20  alleged acts of negligence, intentional misrepresentation, fraudulent concealment, breach

21  of fiduciary duty, conspiracy and negligent misrepresentation in his capacity as an

22  accountant [as described in the original complaint] ... might be the basis of a claim or

23  suit." *Id.* at 1222.

24       Here too, it is inconceivable that Cirrus, having been notified that the underlying

25  plaintiff intended to sue it and having received a copy of the complaint detailing the

26  alleged wrongful acts of Robinson, reasonably could not have foreseen that it might be

27  sued. In this regard, Allen's subjective intent is irrelevant. *Weddington v. United Nat'l*

28  *Ins. Co.*, 2008 U.S.Dist.LEXIS 15610, *5, 16 (N.D.Cal. 2008) (objective standard applies

1   to question on application asking whether proposed insured is aware of any circumstance

2   "which might reasonably be expected to be the basis of a ... suit ....").  The prior-

3   knowledge exclusion, thus, also bars coverage under the reasonably-foreseeable clause as

4   well.[8]

5                                   **CONCLUSION**

6        Coverage for Cirrus's alleged liability in the *Tracy* action was triggered only under

7   Interstate's policy and not under United's, and the prior-knowledge exclusion of United's

8   policy would in any event bar coverage under it.  United, therefore, respectfully requests

9   an order granting its motion for summary judgment and ordering entry of judgment in

10  favor of United and against Interstate on the complaint and counterclaim, including entry

11  of a money judgment against Interstate in the sum of $100,000.  Because that sum is

12  liquidated, United also is entitled to prejudgment interest at 10% from its payment on June

13  18, 2007.[9]

14                                    Respectfully submitted,

15                                    NIELSEN, HALEY & ABBOTT LLP

16

17

18  July 21, 2008              By:   _____

19                                    Thomas H. Nienow
                                      Attorneys for Defendant and Counterclaimant
20                                    UNITED NATIONAL INSURANCE COMPANY

21  _____

    [8] *See also, American Cont. v. PHICO*, 512 S.E.2d  at 495 (prior-knowledge exclusion is
22  intended to prevent overlapping coverage, and, where insured received inquiry from
    lawyer asking for medical records of client two days before policy incepted, precludes
23  coverage for subsequent lawsuit filed during insurer's policy period).  Our research has
    not disclosed any New Mexico decision regarding such prior-knowledge exclusions.
24

25  [9] Cal. Civ. Code § 3287(a) (one "entitled to recover damages certain ...is entitled also to
    recover interest thereon ..."); Cal. Civ. Code § 3289(b) (rate on contracts is 10%); *see,*
26  *Wisper Corp. v. Cal. Commerce Bank*, 49 Cal.App.4th 948, 958, 57 Cal.Rptr.2d 151
    (1996) (interest properly awarded "where there is essentially no dispute between the
27  parties concerning the basis of computation of damages ... but where their dispute centers
    on the issue of liability giving rise to damage.")
28

                                         18

*Interstate Fire & Casualty Company v. United National Ins. Co.*
United State District Court, Northern District Court No.: C 07-04943 MHP

## PROOF OF SERVICE

I declare that:

I am a citizen of the United States, employed in the County of San Francisco. I am over the age of eighteen years, and not a party to the within cause. My business address is 44 Montgomery Street, Suite 750, San Francisco, California 94104. On the date set forth below I served the following document(s) described as:

**UNITED'S NOTICE OF MOTION FOR SUMMARY JUDGMENT;**

**MEMORANDUM**

[ ]    (BY FACSIMILE) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date.

[ ]    (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Francisco, California.

[ ]    (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

[ ]    (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

[X]    **(BY ELECTRONIC SERVICE)** by submitting an electronic version of the document(s) to be served on all parties listed on the service list on file with the court as of this date.

**Attorney for Plaintiff, Fireman's Fund Ins. Co.**
Christopher J. Borders
Casey A. Hatton
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111
Tel: (415) 362-6000
Fax: (415) 834-9070

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 21, 2008, at San Francisco, California.

*Fatima Puente*
Fatima Puente

**PROOF OF SERVICE**