1  JAMES C. NIELSEN (111889)
    jnielsen@nielsenhaley.com
2  THOMAS H. NIENOW (136454)
    tnienow@nielsenhaley.com
3  NIELSEN, HALEY & ABBOTT LLP
4  44 Montgomery Street, Suite 750
5  San Francisco, California 94104
   Telephone: (415) 693-0900
6  Facsimile: (415) 693-9674

Attorneys for Defendant and Counterclaimant
UNITED NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY, | Action No.: C 07-04943 MHP |
| Plaintiff, | UNITED'S OPPOSITION TO INTERSTATE'S MOTION FOR SUMMARY JUDGMENT. |
| v. | |
| UNITED NATIONAL INSURANCE COMPANY and DOES 1 through 10, | |
| Defendants. | |
| UNITED NATIONAL INSURANCE COMPANY, | Accompanying document: |
| Counterclaimant, | Response to Interstate's evidentiary objections. |
| v. | |
| INTERSTATE FIRE & CASUALTY COMPANY and Roes 1 through 10, | |
| Counterdefendants. | |

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| DISCUSSION | 3 |
| 1. Interstate muddles the standards for determining which of the two claims-made policies applies. | 3 |
| 2. The *Tracy* action was a claim first made-and-reported under the Interstate policy alone. | 5 |
|     A. The Interstate policy. | 5 |
|     B. The United policy. | 8 |
| 3. Interstate ignores United's prior-knowledge exclusion, which barred coverage for the *Tracy* action. | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**CASES**

*Aydin Corp. v. First State Ins. Co.,*
18 Cal.4th 1183, 77 Cal.Rptr.2d 537 (1998) .......... 5

*Gyler v. Mission Ins. Co.,*
10 Cal.3d 216, 110 Cal.Rptr. 139 (1973) .......... 2, 9

*Helfand v. Nat'l Union Fire Ins. Co.,*
10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (1992) .......... 1

*KPFF, Inc. v. California Union Ins. Co.,*
56 Cal.App.4th 963, 66 Cal.Rptr.2d 36 (1997) .......... 2, 9

*Montrose Chem. Corp. v. Superior Court,*
6 Cal.4th 287, 24 Cal.Rptr.2d 467 (1993) .......... 4

*Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Co.,*
695 F.Supp. 469 (C.D. Cal. 1987) .......... 6, 9

*Pension Trust Fund etc. v. Federal Ins. Co.,*
307 F.3d 944 (9th Cir. 2002) .......... 5

*Ringler v. Maryland Cas. Co.,*
80 Cal.App.4th 1165, 80 Cal.Rptr.2d 136 (2000) .......... 12

*Root v. American Equity Spec. Ins. Co.,*
130 Cal.App.4th 926, 30 Cal.Rptr.2d 631 (2005) .......... 4, 5, 6, 7, 8

*Safeco Ins. Co. of Am. v. Superior Court,*
140 Cal.App.4th 874, 44 Cal.Rptr.3d 841 (2006) .......... 3, 3

*St. Paul Fire and Marine Ins. Co. v. Hebert Constr., Inc.,*
2007 U.S.Dist.LEXIS 18337 (W.D. Wash. 2007) .......... 3

*Vollmer Engineering, Inc. v. Sequoia Ins. Co.,*
64 Cal.App.2d 261, 134 Cal.Rptr. 427 (1976) .......... 7

*Westrec Marina Mgmnt. v. Arrowood Indem. Co.,*
163 Cal.App.4th 1387, 78 Cal.Rptr.3d 264 (2008) .......... 6, 7, 8

# INTRODUCTION

United National Insurance Company's concurrent motion for summary judgment—incorporated for brevity here—explains that claims-made insurance was developed to "make coverage more available and cheaper than occurrence policies." *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 869, 888, 13 Cal.Rptr.2d 295 (1992). Basic to such an approach is the notion that one policy will apply to a given claim—the policy in effect when the claim is first made and reported.

In this instance, plaintiff Interstate Fire & Casualty Company and defendant United dispute when a claim for wrongful death was first made against their common insured, Cirrus Medical Staffing LLC. Having jointly settled the wrongful-death claim, each insurer seeks its respective payment back from the other. United contends that the wrongful-death claim was first made and reported when Cirrus learned of the lawsuit naming Cirrus's employee as the negligent actor (but mistakenly alleging that she was employed by another defendant), was told by one of the attorneys that the plaintiff now intended to add Cirrus, and reported this information to its insurer then on the risk—Interstate. Interstate, by contrast, contends that all of this activity did not suffice to constitute a claim, and that a claim was first made only when the plaintiff completed the ministerial task of correcting the wrongful-death complaint to name Cirrus as the negligent nurse's employer—something that occurred a couple of months later, after Cirrus had bought a new claims-made policy from United.

As shown in United's motion and within, Interstate's hypertechnical reading of the term "claim" defies common sense and lacks any support in the case law, which uniformly reads the term as a layperson would—and as Cirrus actually did here—to refer to complaints that go beyond mere expressions of dissatisfaction or lodging of mere grievances. There is no doubt that the wrongful-death complaint, the allegations about the mistakenly-identified Cirrus employee, and the news that the plaintiff intended to add Cirrus combined to constitute a claim, and was correctly identified by Cirrus as such and promptly reported to Interstate.

There is more. As discussed in United's motion and within, United's policy expressly excludes coverage for "[a]ny 'claim,' 'suit' or 'wrongful act' that might result in a 'claim' or 'suit,' of which any insured had knowledge or could have reasonably foreseen at the signing date of the application for this insurance." It concurrently expands coverage by calling for an insured to report not merely formal demands, but also anything of which the insured becomes aware that "may give rise to a 'claim.'" Such "awareness" clauses have long been the approved norm for claims-made coverages. *E.g., Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 220, 110 Cal.Rptr. 139 (1973); *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963, 975, 66 Cal.Rptr.2d 36 (1997)—discussed within. Interstate, however, argues that its coverage is narrower than usual because it does not include a standard awareness clause. Interstate's approach creates a potential gap in coverage because an insured with knowledge of a probable future claim during Interstate's policy period would be unable to report it at that time and then, because of that knowledge, be barred from coverage by a standard awareness exclusion in any subsequent policy issued by another insurer.

Fortunately for Cirrus, that potential gap did not materialize here because the wrongful-death claim was indeed first made and reported during Interstate's period. But Interstate's odd policy structure does explain why its arguments here require such peculiar mental gyrations at odds with a common-sense application of claims-made insurance: Interstate struggles to avoid the appearance of a gap. The brief that follows responds to Interstate's specific arguments and cross-references United's concurrent motion as needed. Because the facts are undisputed, United does not repeat its statement of facts from its own motion. Based on those facts, United respectfully urges the court to deny Interstate's motion, grant United's, and order entry of a money judgment in favor of United in the amount of its $100,000 underlying settlement contribution, plus prejudgment interest, as prayed in United's motion.

# DISCUSSION

## 1. Interstate muddles the standards for determining which of the two claims-made policies applies.

Interstate begins its motion with a section devoted to what it calls "Equitable Indemnity Principles." (Motion 9:12-10:14.) There, Interstate asserts that "[a] settling insurer seeking equitable indemnity from a nonparticipating coinsurer need only establish a 'potential for coverage' under the recalcitrant coinsurer's policy in order to obtain reimbursement of those costs of defense and settlement." (Motion 9:28-10:4, citing *Safeco Ins. Co. of Am. v. Superior Court*, 140 Cal.App.4th 874, 879, 44 Cal.Rptr.3d 841 (2006).)

Interstate is quite wrong, and it begins its error by misapplying *Safeco*. The *Safeco* court held that, despite the general rule that an insurer's duty to indemnify arises only where there is actual coverage for an insured's liability, where one insurer defends and settles a claim and then sues another insurer that shares the same risk but refused to pay, the participating insurer's burden of producing evidence is met as to both the duty to defend *and* indemnify by showing potential coverage under the nonparticipating insurer's policy. 140 Cal.App.4th at 881. The "potential-for-coverage" standard is, of course, always the standard for defense. The key is that *Safeco* punishes an insurer that refuses to participate in a settlement by creating a rebuttable presumption of *actual coverage* (indemnity), thereby placing the burden of proving non-coverage on that nonsettling insurer. The *Safeco* court adopted this standard for indemnity to prevent insurers from "disavow[ing] their contractual responsibilities to their insureds ...." *Id*. at 881. But *Safeco* does not apply where, as here, both insurers paid the settlement and each seeks its money back from the other. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Hebert Constr., Inc.*, 2007 U.S.Dist.LEXIS 18337, *29 (W.D. Wash. 2007) ("The Court rejects Admiral's assertion that *Safeco* [ ] is controlling[;] [t]he *Safeco* decision considered an action by a settling insurer against a 'nonparticipating insurer,' which is markedly different from the case before this Court").

Interstate also mischaracterizes *Safeco* as setting forth a principle of "equitable indemnity," whereas the *Safeco* court actually limited its holding to "an action for equitable *contribution* by a settling insurer against a nonparticipating insurer," *id.* at 881 (italics added), clarifying that the nonparticipating insurer there had "rejected all tenders and refused to participate ...." *Id.* at 877. As noted in *Safeco*, "[e]quitable contribution apportions costs among insurers *sharing the same level of liability* on the same risk as to the same insured ...." *Id.* at 879 (italics added). Thus, ""[t]he purpose of this rule of equity is to accomplish substantial justice by *equalizing the common burden shared by coinsurers* ...." *Id* (italics added).

By contrast, the instant cross-motions do not involve claims for equitable contribution because neither insurer contends that coverage was *shared;* instead, each contends that the other is *entirely responsible* for the defense and indemnity of Cirrus. As discussed in United's concurrent motion, this is the nature of the claims-made-and-reported policies because, by definition, a claim cannot be *first* made and reported under two policies covering consecutive periods. And Interstate improperly characterizes United as a "nonparticipating" insurer because United contributed $100,000 toward the settlement of the *Tracy* action.

In fact, Interstate is way off base by invoking a potential-for-coverage standard even as to its demand for recoupment of underlying defense fees. (Motion 9:6-11.) Potential-for-coverage analysis involves determining whether the allegations of an underlying complaint, if proven, would satisfy a policy's substantive coverage provisions. *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467 (1993). Here, neither insurer disputes that the underlying *Tracy* action asserted a claim for medical negligence within their policies' substantive terms. The court need not parse either the underlying complaint or any extrinsic evidence. Because the scope of substantive coverage is not an issue here, the potential-for-coverage standard, and Interstate's rhetorical flourishes involving bare "possibilities" or "conceivable theories" (Motion at 9, 14) are entirely irrelevant. *See, e.g., Root v. American Equity Spec. Ins. Co.,*

130 Cal.App.4th 926, 943, 30 Cal.Rptr.3d 631 (2005) ("the reporting condition" is "not an element of the fundamental risk insured").[1]

Instead, Interstate's demand for defense-cost recoupment—just like its demand for settlement-cost recoupment—depends solely on whether the claims-made-and-reported conditions have been met under Interstate's or under United's policy. One policy or the other applies.

## 2. The *Tracy* action was a claim first made-and-reported under the Interstate policy alone.

Interstate asserts that the United policy applies because "Cirrus was not a defendant to the *Tracy* action until the Amended Complaint was filed and served on Cirrus in March 2006 ...." (Motion 10:17-22.) Interstate is wrong.

### A. The Interstate policy.

As set forth in United's concurrent motion, under claims-made-and-reported policies "notice is the event that actually triggers coverage." *Pension Trust Fund etc. v. Federal Ins. Co.*, 307 F.3d 944, 956-957 (9th Cir. 2002). Here, it is undisputed that in January 2007—while Interstate's policy was in effect—Interstate received a copy of the *Tracy* action naming Cirrus's employee (Nurse Robinson) as the person responsible for the death of the decedent and Cirrus's agent gave Interstate a "notice of claim" reporting the *Tracy* plaintiff's intention to name Cirrus as a defendant. (Joint Statement of Undisputed Facts [JSUF] No. 7, Exh. E. [*Tracy* complaint p. 4, ¶19]; JSUF No. 8, Exh. F [attorney letter]; JSUF No. 10, Exh. H [notice of claim]; JSUF No. 11, Exh. I [email re

---

[1] Interstate's reliance upon *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1193, 77 Cal.Rptr.2d 537 (1998), for the proposition that the burden shifts once Interstate has made its *prima facie* showing of potential coverage (Motion 10) is equally misplaced, because *Aydin* was not an action between insurers seeking recoupment, and because *Aydin* held that "there is no compelling reason to alter the normal allocation of the burden of proof with respect to the 'sudden and accidental' exception to the pollution exclusion," which has no application here.

1 attachments to Interstate]; JSUF No. 12, Exh. J [attorney transmittal to Interstate].)

2 The question, therefore, is whether all these notices sufficed to trigger Interstate's policy. It plainly does. No wonder, then, that Interstate asserts in a conclusory way that its policy does not apply because "[t]he January 2006 communications do not meet any element of a 'claim' under either the ordinary and popular meaning or under the Interstate definition." (Motion 16:11-13.)

This is nonsense. The Interstate policy first defines a claim as a "demand for money ...." (Exh. A, Form 01-PL-4002 (03/04), p. 5 [IFC00161].) As noted in United's motion, "[t]he ordinary meaning of 'demand' as used in this context [of claims-made-and-reported coverage] is a request for something under an assertion of right or an insistence on some course of action." *Westrec Marina Mgmnt., Inc. v. Arrowood Indem. Co.*, 163 Cal.App.4th 1387, 1392, 78 Cal.Rptr.3d 264 (2008). By contrast, "[a] mere request for an explanation, expression of dissatisfaction, or lodging of a grievance that falls short of such an insistence is not a demand." *Id.* The January notices to Interstate providing the complaint that had been filed for the death of Marilyn Tracy and that specifically named Cirrus's employee Robinson as legally responsible, and advising that the plaintiff in *Tracy* intended to hold Cirrus liable, were not a mere expression of dissatisfaction. They constituted a "demand," and thus a claim under the Interstate policy. *Westrec*, 163 Cal.App.4th at 1393.

Interstate also asserts that the "January 2006 communications" cannot constitute a claim because they "were ... not by a claimant ...." (Motion 11:16-18.) The point is meritless, however, because there is no requirement in the policy or the law that a claimant personally relay the demand to the insured. *See, e.g., Root,* 130 Cal.App.4th at 931 (nonparty's telephone inquiry to lawyer seeking reaction to unserved malpractice action, which attorney considered to be a "possible prank," did constitute a "claim.").

Next, Interstate cites *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Co.*, 695 F.Supp. 469, 479 (C.D. Cal. 1987), for the proposition that Interstate's "definition [of claim] clearly meets the ordinary and popular meaning of the word 'claim.'" (Motion

16:8-10.) But Interstate's assertion does not refute the conclusion that the complaint naming Cirrus's employee combined with the letter notifying that the attorney for the *Tracy* plaintiffs intended to sue Cirrus constituted a "demand." Moreover, *Mt. Hawley* harmonizes with *Westrec* by finding that pre-suit letters advising that "failure to comply with [government] directives could result in 'formal enforcement proceedings,'" and asking directors to "address the issues raised 'in light of your fiduciary duties with respect to the safety and soundness of Consolidated Savings Bank,'" constituted a claim made against a bank's officers and director's for the purpose of claims-made-and-reported coverage, although litigation was not commenced until after the policy had expired. 695 F.Supp. at 479. The point simply is not close.

      Interstate also argues that "the 'ordinary and popular' meaning of 'claim' is not met by [attorney] Skrak's warning" that plaintiff "intend[s] to bring you into the case." (Motion 11:18-20.) But Interstate ignores *Westrec,* which construes the word "demand" and requires a contrary conclusion. 163 Cal.App.4th at 1392; *see also Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal.App.3d 261, 268, 134 Cal.Rptr. 427 (1976) (letter advising that 'there are major deficiencies in the air distribution system on this project [caused by the insured] and, therefore, we must hold your firm responsible for correcting the condition" constituted a claim).

      Significantly, Interstate likewise fails to confront the fact that its policy also defines a claim to include the "filing of **Suit** *naming* the **Insured**." (Exh. A., Form 01-PL-4002 (03/04), p.5 [IFC00165], italics added.) As noted in United's motion, in everyday usage the verb "to name" means to "[a]ssign a specified, proper name to" or "to refer to by name ...." *See,* www.websters-online-dictionary.org. The original *Tracy* complaint referred by name to Cirrus's employee, Nurse Robinson, and the complaint was thus a suit "naming" her. Robinson, who acted in the course and scope of her employment, qualified as an insured. Thus, the January notices also satisfied Interstate's alternate definition of "claim." *Root*, 130 Cal.App.4th at 933 ("reasonable insureds might very well deduce that the mere filing of a suit against them, even without their knowledge,

is a 'claim' under the policy").

Because the *Tracy* complaint named Robinson, it is immaterial that it did not name Cirrus—contrary to Interstate's suggestion. (Motion 11:16-18.) This is true under Interstate's basic definition of "claim" because the complaint naming Robinson coupled with the news that the *Tracy* plaintiff would sue Cirrus amounted to a demand. It is also true under Interstate's expanded definition because the *Tracy* complaint specifically "named" an "insured," Nurse Robinson. As applied to the latter definition, the Interstate policy makes any amendment to the original suit—such as the later amended complaint also naming Cirrus—"considered as having been made at the time the first such **Claim** is made ...." (Exh. A, Form 01-PL-4002 (03/04), p. 2 [IFC00162].) Thus, the Interstate policy applied to both the original and amended *Tracy* complaints under either of Interstate's definitions of "claim."

### B.     The United policy.

If the Interstate policy applied to the *Tracy* complaints, the United policy could not. As noted in United's motion, its policy applies "*only* if a 'claim' ... is *first* made against the insured and reported to [United] during the 'policy period." (Exh. B, Form CPA-119 (2/2005), p. 1 [IFC00070].) Thus, the claim must have been *first* made *after* United's policy began on January 27, 2006, in order for coverage to attach. United's policy defines a "claim" as a "written demand upon the insured for 'compensatory damages,'" or, alternatively, a "report[] of accidents, errors, occurrence, offenses or omissions which may give rise to a 'claim' under this policy." (Exh. B, Form CPA-119 (2/2005), p. 7 [IFC00076].) As under the Interstate policy, the letter to Cirrus advising that it was to be sued, was more than an expression of dissatisfaction or an inquiry—it was an assertion of a right and course of action against Cirrus. *Westrec*, 163 Cal.App.3d at 1396. And the *Tracy* complaint expressly demanded compensatory damages for Nurse Robinson's alleged wrongful acts, constituting a "claim" under the United policy. *Root.* The pre-policy demand thus met the United policy's first definition of "claim."

In asserting that the January notices did not meet the first clause in United's definition of claim, Interstate cites *Mt. Hawley*, 695 F.Supp. at 479, for "the ordinary and popular meaning of 'claim'" as "a demand for something as a right or as due." (Motion 11:14-15.) As explained earlier, however, *Mt. Hawley* actually confirms that a pre-suit letter advising of an intent to sue constitutes a "demand" for the purpose of a claims-made-and-reported policy. 695 F.Supp. at 479.

United's policy also expands the definition of claim to include a report of conduct that "may give rise to a 'claim,'" an alternative that also was satisfied before the United policy incepted because attorney Skrak's letter and the *Tracy* complaint advised Cirrus of Robinson's conduct that might (indeed, would) give rise to a suit. (Exh. B, Form CPA-119 (2/2005), p. 7 [IFC00076].) Interstate attacks this expanded claim definition as "expressly 'includ[ing] something that is *not* a claim—i.e., an occurrence, event, etc., that is not now a claim but may form the basis for a claim that develops in the future." (Motion 11:27-12:2.) Interstate cavils that this clause "turns the ordinary and popular meaning of 'claim' on its head, changing it from meaning a demand for something as a right or due, to an amorphous test of 'knowledge' an occurrence or event that may or may not ever result in such a demand." (Motion 12:6-10.) According to Interstate, "this ... would have the absurd result of determining coverage based on an insured's knowledge that an event or occurrence happened without any demand by a claimant." (Motion 12:6-8.)

Interstate's arguments lack merit. United's expanded coverage through the expanded definition of "claim" does not effect an "absurd result," but encourages an insured to report conduct that might later ripen into a lawsuit, and to have that lawsuit deemed to constitute a claim first made at the time the conduct is reported. Such "awareness provisions" have been common and routinely enforced for decades. *See, e.g., Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 220, 110 Cal.Rptr. 139 (1973) ("The first quoted paragraph provides coverage when the date of injury is within the policy period whenever asserted; the second paragraph provides additional coverage when both the negligent act

has occurred and the attorney has given the insurer notice thereof but injury occurs after expiration of the policy"); *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963, 975, 66 Cal.Rptr.2d 36 (1997) ("both the basic terms of the policy and the awareness provision define the triggering event as the reporting of claims made during the policy period"). As noted in introduction, the only peculiarity in this instance is that *Interstate*, not United, apparently attempts to limit its claims-made coverage to less than that which is traditionally underwritten.

Interstate next asserts that this clause should be "read in accord with the doctrine of *ejusdem generis*, holding that general words following specific words are construed to apply only to the same class of things initially specified," and "[s]ince the first sentence of the definition very specifically lists the elements of a 'claim' the second sentence can only reasonably be read to apply where those elements are met in the alternative form of a 'report' of an act or event." (Motion 12:11-18.) The doctrine has no place here, however, because the second clause defining a "claim" is not a "general" clause following specific language, but is rather a specific and alternate definition of claim that is enforceable under California law. *KPFF; Gyler*.

Interstate asserts that "a 'claim' cannot also be expressly defined as something that is *not* a claim," apparently referring to the fact that the expanded definition refers to conduct "which may give rise to a 'claim' under this policy." (Motion 12:21-22.) Interstate argues that "the second sentence should be deemed ambiguous and the definition interpreted in favor of coverage." (Motion 12:19-20) Similarly, Interstate urges that the court should "reject literal enforcement of the second sentence of the 'claim' definition as insufficient conspicuous," because "it voids the ordinary and popular meaning of 'claim' and transforms the policy into an occurrence-based coverage rather than a claims-made coverage." (Motion 13:11-18.)

Nonsense. The expanded definition merely "provides additional coverage." *Gyler*, 10 Cal.3d at 220. Interstate's argument that the clause should not be enforced would in fact *restrict* coverage for the insured by precluding it from reporting possible future

claims. Nor does the use of the term "claim" render the second clause ambiguous any more than Interstate's standard definition of "bodily injury" renders itself ambiguous. That standard definition says "'**Bodily injury**' means bodily injury, sickness or disease, mental anguish, psychological injury or emotional distress sustained by any person, including death at any time resulting therefrom[.]" (Exh. A, Form 01-PL-4002 (03/04), p. 5 [IFC00165].) The nested use of "bodily injury" in the standard definition of "bodily injury" is not—and has never been found to be—confusing, and does no more than expand the definition. So it is with the nested use of "claim" in United's policy. Interstate's strange arguments thus fail.

Under either definition, the claim was first made before United's policy began, and service of the amended *Tracy* complaint was deemed to have been made at the time of the original notice to Cirrus and Interstate. (Exh. B, Form CPA-119 (2/2005), at p. 1 [IFC00070].) United's policy never applied to the *Tracy* action.

### 3. Interstate ignores United's prior-knowledge exclusion, which barred coverage for the *Tracy* action.

As shown in United's motion, its policy excludes coverage for "[a]ny 'claim,' 'suit' or 'wrongful act' that might result in a 'claim' or 'suit,' of which any insured had knowledge or could have reasonably foreseen at the signing date of the application for this insurance." (Exh. B, Form CPA-119 (2/2005), p. 3 [IFC00072].) The exclusion unambiguously applies here because Greg Allen of Cirrus signed the application for the United policy on January 23, 2007, 19 days after attorney Skrak had written to him and told him that plaintiff intended to sue him and 18 days after he had received the *Tracy* complaint detailing Robinson's alleged negligence and demanding compensatory damages. (JSUF No. 34; Exh. DD.) Additionally, Cirrus actually *did* foresee, at the time Allen signed the application, that a suit against Cirrus would result from Nurse Robinson's alleged wrongful acts—after all, Cirrus had already reported it to Interstate—thereby triggering the "reasonably foreseen" clause of United's exclusion as a matter of

1  law. Thus, both clauses of United's prior-knowledge exclusion bar coverage. (United's
2  Motion 16:3-18:4.)[2]

## CONCLUSION

As demonstrated in United's motion, coverage for Cirrus's alleged liability in the *Tracy* action was triggered only under Interstate's policy and not under United's, and the prior-knowledge exclusion of United's policy would in any event bar coverage under it. Interstate's policy provides no basis to refute these conclusions. United, therefore, respectfully requests an order granting its motion for summary judgment and ordering entry of judgment in favor of United and against Interstate on the complaint and counterclaim, including entry of a money judgment against Interstate in the sum of $100,000, plus prejudgment interest.

Respectfully submitted,

NIELSEN, HALEY & ABBOTT LLP

August 4, 2008          By: _____
                             Thomas H. Nienow
                             Attorneys for Defendant and Counterclaimant
                             UNITED NATIONAL INSURANCE COMPANY

---

[2] Interstate also raises three straw-man arguments: <u>First</u>, it cites United's coverage clause, which says that the policy applies only where "no other insurance applies," but says this is unenforceable because United's "only way to defeat ... potential coverage [was] to secure a judicial finding that its policy does not provide coverage." (Motion 14:5-6.) But United does not rely on this language. (Even if it did, "there is no particular requirement that an insurer ask the permission of a trial court before withdrawing from a defense, once the insurer has determined that no potential for indemnification liability exists." *Ringler v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1192, 80 Cal.Rptr.2d 136 (2000).) <u>Second</u>, Interstate argues that United "may claim, using hindsight, that Cirrus made a material misrepresentation in its application ...." (Motion 15:10-11.) United makes no such argument. <u>Third</u>, Interstate projects that United "may claim that its indemnity obligation is limited to $100,000 by virtue of a 'Sexual or Physical Abuse' endorsement ...." (Interstate's Motion 15:20-22.) Again, United makes no such argument.

*Interstate Fire & Casualty Company v. United National Ins. Co.*
United State District Court, Northern District Court No.: C 07-04943 MHP

# PROOF OF SERVICE

I declare that:

I am a citizen of the United States, employed in the County of San Francisco. I am over the age of eighteen years, and not a party to the within cause. My business address is 44 Montgomery Street, Suite 750, San Francisco, California 94104. On the date set forth below I served the following document(s) described as:

UNITED'S OPPOSITION TO INTERSTATE'S MOTION FOR SUMMARY JUDGMENT

[ ] **(BY FACSIMILE)** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date.

[ ] **(BY MAIL)** I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Francisco, California.

[ ] **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

[ ] **(BY OVERNIGHT DELIVERY)** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

[X] **(BY ELECTRONIC SERVICE)** by submitting an electronic version of the document(s) to be served on all parties listed on the service list on file with the court as of this date.

**Attorney for Plaintiff, Fireman's Fund Ins. Co.**
Christopher J. Borders
Casey A. Hatton
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111
Tel: (415) 362-6000
Fax: (415) 834-9070

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 4, 2008, at San Francisco, California.

*/s/ Fatima Puente*
Fatima Puente

PROOF OF SERVICE