Christopher J. Borders (SBN: 135901)
Casey A. Hatton (SBN: 246081)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:   415-362-6000
Facsimile:   415-834-9070

Attorneys for Plaintiff and Counter-Defendant
INTERSTATE FIRE & CASUALTY COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>UNITED NATIONAL INSURANCE COMPANY, and DOES 1 - 10,<br><br>　　　　　Defendants.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>　　　　　Counterclaimant,<br><br>vs.<br><br>INTERSTATE FIRE & CASUALTY COMPANY and ROES 1 - 10,<br><br>　　　　　Counter-Defendant. | Case No.  CV 07-04943 MHP<br><br>**INTERSTATE FIRE & CASUALTY COMPANY'S OPPOSITION TO UNITED NATIONAL'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　Vacated<br>Time:　　　　Vacated<br>Courtroom:　15<br><br>Complaint Filed:　　August 21, 2007<br><br>Counterclaim Filed:　October 1, 2007 |

## I.  INTRODUCTION

The sole issue for this court on the pending cross-motions for summary judgment is what constitutes a "claim". Defendant United National Insurance Company ("UNIC") has failed to prove through undisputed facts that a "claim" occurred during the policy period of plaintiff Interstate Fire

1

& Casualty Company ("Interstate"). Quite the opposite, the undisputed facts and established California law show that no "claim" was made by the insured, Cirrus Medical Staffing, Inc. ("Cirrus") for the claims against it in *Tracy v. Lovelace Sandia Health Services, New Mexico Second Jud. Dist., case no. CV-2005-07009* ("the *Tracy* Action") until several months after the Interstate policy expired and the UNIC policy was in effect. Furthermore, UNIC has not met its burden of proof as to its' so-called "prior-knowledge" exclusion since there was no claim and since there is no evidence of Cirrus' actual knowledge of any claim. Accordingly, Interstate requests that the Court deny UNIC's motion for summary judgment and grant Interstate's motion for summary judgment.

## II.  LEGAL ARGUMENT

### A.  The Purpose of Claims-Made Coverage

Although UNIC has gone to great pains to "contextualize" the difference between claims-made and occurrence coverage, it essentially asks this court to treat the damages resulting from the death of Marilyn Tracy more like an "occurrence" that may trigger coverage under several policies. UNIC repeatedly misstates or ignores California law when it references Cirrus' awareness of the existence of the *Tracy* Action as relevant "notice" of an act or event. *See, United's Motion for Summary Judgment*, p. 3, l. 5; p. 4, l. 13-14; p. 7, l. 15; and p. 13, l. 4-5.

In fact, claims-made policies reflect the reality that negligent acts occur constantly, but that the ramifications of those negligent acts may not manifest until a later time or may never manifest. *Montrose Chemical Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal.4th 645, 688 (Cal. 1995). Such policies "were specifically developed to limit an insurer's risk by restricting coverage to the single policy in effect at the time a claim was asserted against the insured, without regard to the timing of the damage or injury, thus permitting the carrier to establish reserves without regard to possibilities of inflation, upward-spiraling jury awards, or enlargements of tort liability after the policy period." *Id.* Accordingly, "[t]he hallmark of a 'claims-made' policy is that exposure for claims terminates with expiration or termination of the policy, thereby providing certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums. The benefit to insureds

is that the insurer can make coverage more available and cheaper than occurrence policies." *Helfand v. National Union Fire Ins. Co.,* 10 Cal.App.4th 869, 888 (Cal. App. 1992).

Given the pragmatic basis for the claims-made policy, it follows that, unless a policy provides otherwise, each "claims-made" policy unambiguously provides coverage only for claims-made during the policy period—not claims "maturing during the policy period but not asserted until later." *Gyler v. Mission Ins. Co.,* 10 Cal.3d 216, 219 – 220 (Cal. 1973).

Thus, under California law, an insured's knowledge of an act or event that may – or may not – later result in a claim is immaterial to determining when a "claim" is made and which policy responds. UNIC's motion continuously mistakes Cirrus' receipt of a letter from defense counsel for a party to the *Tracy* Action as something other than what it was – the hearsay, second-hand guess of a lawyer of what another party may – or may not – do at some point in the future. The equivocating and speculative hearsay contained in Lovelace Sandia's defense counsel Ellen Thorne Skrak's letter is precisely the type of uncertainty contemplated by the claims-made policy. The proper inquiry for coverage under a claims-made policy is not when the injury or damage was sustained, or when the insured was told about an event causing injury or damage, but rather when the claim was made. As discussed below and in Interstate's summary judgment motion, in this case the one and only "claim" was made when a lawsuit was served on Cirrus on March 28, 2006, during the UNIC policy period.

**B.    A Claim Was Not Made During the Interstate Policy Period**

1.    <u>Ms. Skrak's January 4, 2006 Correspondence Is Not a Demand for Money</u>

UNIC's motion is founded entirely upon its erroneous characterization of Skrak's January 4, 2006 letter as "an assertion of a right and course of action against Cirrus." (Motion, 16: 11 – 12). The Interstate policy defines "claim" in accordance with California's legal definition of claim as a "demand for money" or lawsuit. California courts consistently hold that a "claim" is a demand for something as a right or as due. *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.,* 64 Cal.App.3d 261 (Cal.App. 1976). Skrak's recitation of her suspicions and speculation about what the *Tracy* Action plaintiff may do in the future is not a demand by a claimant or a claimant's attorney for something due as required to trigger a claims-made policy.

3

### (i) A Third-Party's Second-Hand Speculation Is Not a "Claim" as a Matter of Established California Law

The case of *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963 (Cal.App. 1997) is directly on point. The insured in *KPFF* was sued during the California Union policy period for negligently designing a building. California Union accepted KPFF's defense and that suit was settled. Two years after California Union's policy had expired, KPFF was sued by the same plaintiff for negligent design of other parts of the same building. California Union accepted the defense as an extension of the earlier claim. The plaintiff then amended its complaint to allege claims for seismic deficiencies which California Union concluded were new claims arising after expiration of its policy. California Union settled the non-seismic claims and withdrew its defense. The insured sued, asking the court to evaluate whether the seismic claims fell within the policy's "awareness provision" so that the insurer should have continued defending the claims as something that the parties were aware of from the time of the first lawsuit. *KPFF*, 56 Cal.App.4th at 968 – 970.

The insured argued that the insurer received notice of the seismic claim when its attorney wrote a letter to the claims examiner—during the first lawsuit—stating that a seismic deficiency claim was possible. The attorney wrote, "Whether there is any substance to that report, I cannot say…I suspect, then, that [the property damage case] was filed…to attempt to get a declaration as to responsibility for whatever defects may exists and which are apparently being investigated at the present time." *KPFF*, 56 Cal.App.4th at 969 – 970. The court characterized the letter as a "vague, second-hand" account of a structural investigation that may possibly give rise to a seismic claim in the future. *KPFF*, 56 Cal.App.4th at 976. The court expressly held that this sort of speculation in the attorney's letter "did not constitute written notice from the insured within the meaning of the [policy]... . The insurer's chance receipt of information from third parties does not constitute an insuring event under a claims-made policy." *KPFF*, 56 Cal.App.4th at 976-977. The attorney's letter only set forth his subjective evaluation of the case based on his participation in the depositions and hearsay reports, and did not indicate that a claim for seismic design deficiencies was or even would be made by the claimant. The attorney's letter did was not a "claim" because, "Reports based

upon speculation or rumor do not rise to the level of notice of a claim under the awareness provision." *KPFF*, 56 Cal.App.4th at 977.

### (ii) UNIC's Citation to Westec is Misplaced

Ignoring KPFF and trying to contort Skrak's speculative letter into a "claim," UNIC cites *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* 163 Cal.App.4th 1387 (Cal.App. 2008). The *Westrec* decision is similar to the instant matter to the extent that it addressed whether a letter could constitute a "claim," but its ruling is consistent with *KPFF* and Interstate's position.

*Westrec* dealt with a dispute over whether a "claim" was made against Westrec during the Arrowood policy period of July 1, 2002 through July 1, 2003. On April 14, 2003, Clark, the insured's employee, filed a complaint with the Department of Fair Employment and Housing ("DFEH") and requested an immediate right-to-sue notice. *Id.* at 1390. The following day the DFEH issued a right-to-sue notice to Westrec. *Id.* On June 24, 2003, Clark's attorney wrote a letter to Westrec noting that Clark received a right-to-sue letter and asked if Westrec would "prefer to attempt to resolve or mediate this matter, or if it will be necessary to file a lawsuit." Clark's attorney further wrote that before filing a lawsuit he would give Westrec the opportunity "to do the right thing to promptly rectify the harm caused to [Clark] in a confidential and discreet manner." *Id.* The *Westrec* court correctly found that this letter was a claim because it was from the claimant's lawyer on behalf of the claimant and "clearly expressed Clark's intent to sue Westrec for employment discrimination if an appropriate settlement could not be reached." *Id. at,* 1392. The letter clearly fit the insurance policy's definition of the claim because it was a claimant's "written demand for civil damages or other relief." *Id.*

The content and source of the letter in *Westrec* are in stark contrast to the content and source of Skrak's January 4, 2006 letter. Skrak's letter is not from a claimant or her attorney, and does not state an express intent to sue Cirrus. Skrak only speculates that a third-party, the *Tracy* Action plaintiff, <u>may</u> issue a subpoena or <u>may</u> attempt to make Cirrus a party or (implicitly) <u>may</u> do nothing. Like the correspondence at issue in *KPFF, supra,* Skrak's letter is entirely composed of her hearsay speculation of the designs of her litigation opponent. Skrak wrote the letter on behalf of *her*

*own client,* Lovelace Sandia, which of course had a self-serving interest in getting move defendants involved in the litigation to lessen its own exposure. At no point before March 2006 did the *Tracy* Action plaintiffs communicate any desire to sue Cirrus, nor did the *Tracy* Action plaintiffs issue a subpoena or any other demand to Cirrus. Regardless of Skrak's motivation in corresponding with Cirrus, the letter does not express a demand by the *Tracy* Action plaintiffs, nor does it constitute a "claim" under the reasoning set forth it *KPFF, supra.*

### 2. The Original Tracy Action Did Not "Name" The Insured

UNIC ignores the undisputed facts and strains logic with its additional argument that the 2005 original complaint in the *Tracy* Action "named" Cirrus. *United's Motion for Summary Judgment*, pp. 14-16. UNIC seems to claim, uniquely for a claims-made insurer, that anytime a third party is mentioned in the factual recitations or allegations of a complaint it is "named" in the complaint and entitled to a defense from its insurer – even though it is not a party. This is an absurd reading to the word, contrary to all of the insurance contract interpretation guidance cited by both parties and which ignores that there still must be a "claim" by a claimant to trigger coverage. The court should give effect to the parties' reasonable expectations, and in so doing, "the it must interpret the language in context, with regard to its intended function in the policy." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265 (Cal. 1992). In *Bank of the West,* the court specifically rejected the insured's reliance on dictionary definitions of "unfair competition" because, although they were correct in the abstract sense, they disregarded the use of "unfair competition" within the context of the policy. *Id.* at 1265. Similarly, the *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715 (Cal.App.1993), the court interpreted various dictionaries' definitions of "sudden" and concluded that a "a word's context in a case can reveal a more refined meaning than those found in the dictionary. *Id.* at 754.

A party is "named" in a lawsuit when it is summoned to court as a party to the lawsuit. See California Code of Civil Procedure § 412.20(a). Thus, the process of "naming" a defendant is the only way to properly affect service. *Lyman v. Milton,* 44 Cal. 630, 634 (Cal. 1872). "[O]ne who is not named either by his true or a fictitious name or as an unknown defendant is not a proper party to

an action, and service of summons upon such person upon proper motion should be quashed." *Fireman's Fund Insurance Company v. Sparks Construction, Inc.,* 114 Cal.App.4th 1135, 1145 (Cal.App. 2004), quoting, *Fuss v. City of Los Angeles,* 162 Cal.App.2d 643, 646 (Cal.App. 1958). In *Fuss,* the court held that a corporate entity not designated as a defendant in the summons or complaint was not a named party to the action. *Id.*

Read in context, Interstate's definition of claim as a lawsuit "naming" the insured refers to the process by which a defendant is designated as a party to the complaint. Cirrus is not mentioned in the Tracy complaint. Although a "C. Robinson" is mentioned in the allegations of the complaint, "C. Robinson" is not designated as a party to the action.

The original *Tracy* complaint had one defendant – Lovelace Sandia. Its factual allegations asserted that a host of medical professionals were negligent and Lovelace Sandia was legally liable for their negligence. One of the allegedly negligent nurses was "C. Robinson." The 2005 complaint did not "name" Cirrus, mention Cirrus, or state that "C. Robinson" was other than a Lovelace Sandia employee. JSUF, Ex. E. To be "named" in a lawsuit requires that the Insured by actually mentioned—by name—in the lawsuit. Cirrus is not named at all in the original *Tracy* complaint. The Tracy plaintiff did not name Cirrus in any sense of the word until March 21, 2006.

### C. The First Amended *Tracy* Complaint Was a Claim First Made During the United National Policy Period

In light of *KPFF, supra,* and the undisputed facts regarding the January 2006 communications, Cirrus first received a "claim" on March 28, 2006 when it was served with the First Amended Complaint in the *Tracy* Action. JSUF, #15. The claim was first made within the UNIC policy period by UNIC's own definition of "claim" as a demand upon the insured, including "service of a 'suit.'"

As discussed more fully in Interstate's motion for summary judgment, the second sentence of the UNIC definition of "claim" is either not satisfied by the undisputed facts or is unenforcably ambiguous. Memorandum of Law in Support of Interstate Fire and Casualty Co.'s Motion for Summary Judgment, PP. 11-13. UNIC offers a token one sentence argument in its motion to

7

summary judgment asking the court to apply this part of the definition. But in so doing, UNIC essentially asks the court to focus turn its policy into an occurrence-based policy with coverage determined by the date of the causal act or event rather than the date of an actual "claim." The purpose of the claims-made policy is to limit the insurer's risk to claims actually made during the policy period. *Montrose, supra.* This ambiguous and overly broad definition of "claim" cannot provide a basis to deny coverage under the United National policy.

### D. United National Cannot Avoid Its Defense and Indemnity Obligations Based on Its "Prior Knowledge" Exclusion

UNIC also seeks summary judgment on the ground that the *Tracy* Action is excluded from coverage pursuant to an exclusion for "any claim which any insured had knowledge or could have reasonably foreseen at the signing of the date of the application." United Motion for Summary Judgment, P. 16, l. 16-19. 16; JSUF, Ex. B., p. 3. This exclusion does not apply. There was no "claim" at the time the application was signed, negating the "knowledge" requirement is not met. The undisputed facts also show that a subpoena, a lawsuit or nothing may have been forthcoming from the *Tracy* Action plaintiffs so no "claim" was sufficiently likely to be something that Cirrus could have foreseen. Finally, there is undisputed evidence that both Cirrus and UNIC both believed that the January 2006 communications were not a "claim."

#### 1. *Coregis* is Inapposite and Actually Supports that the Exclusion Does Not Apply

UNIC bases this argument entirely on the reasoning set forth in *Coregis Ins. Co. v. Camico Mut. Ins. Co.,* 959 F.Supp. 1213 (C.D. Cal. 1997) which is factually inapposite. UNIC's "prior knowledge" is a distraction from the true issue in this matter—when a claim was made—and cannot provide a basis for UNIC to deny its defense and indemnity obligations. In *Coregis,* accountant London was insured by Camico under a claims-made policy for the policy period of 1986 through 1988 with tail coverage for claims made through 1993 based on wrongful acts which occurred in 1986 – 1988. London was subsequently insured by Coregis' under claims-made policies for the policy periods November 1, 1992 through November 1, 1993 and November 1, 1994 through November 1, 1995. *Coregis,* 959 F.Supp. at 1215 – 1216.

On July 9, 1993, Gindi, one of London's clients, sued him for professional negligence based on acts that allegedly occurred between 1984 and 1988. London tendered the action to Camico and Camico assumed the defense and indemnity obligations of the original complaint. Although London was also insured by Coregis for claims-made and reported during its policy period, London never tendered the action to Coregis under the 1993 policy. *Coregis*, 959 F.Supp. at 1215. On April 5, 1995, just prior to trial, Gindi amended his complaint to allege that London engaged in wrongful acts from 1984 through 1992. On June 5, 1995, London tendered the Amended *Gindi* Complaint to Coregis. Coregis denied coverage on the ground that the claim was not first made during its policy period and that its Prior Notice exclusion excluded coverage since London knew of the claims asserted against him in Gindi's lawsuit prior to November 1, 1994. *Coregis*, 959 F.Supp. at 1217.

Applying California law, the Court agreed with Coregis that coverage was not excluded by the policy's Prior Notice exclusion. *Coregis*, 959 F.Supp. at 1221. The Court's holding is based entirely on the fact that London was actually sued and served with a complaint in July 1993, making him aware of acts alleged in the complaint at that time. *Coregis*, 959 F.Supp. at 1222.

The "prior notice" at issue in *Coregis,* is completely distinguishable from the instant matter. At the time the Coregis policy incepted, the insured had been sued and was actively defending the litigation. The insured only tendered its defense to Coregis when the claimant amended its complaint during the Coregis policy period to include several more years of allegedly negligent conduct. Here, Cirrus was never sued, nor was any claim made against Cirrus, prior to the inception of UNIC's policy. The Amended *Tracy* Complaint is the first time Cirrus is a named party to lawsuit and the only claim against Cirrus. Prior to the inception of the United National policy, the only inkling of a potential claim was the second-hand, vague hearsay guesses of Lovelace Sandia's defense attorney. Second-hand, vague, hearsay representations cannot constitute a claim and therefore any objective or subjective inferences based thereon are irrelevant to this coverage determination.

2. <u>UNIC and Cirrus Had Equal Notice of the Existence of the *Tracy* Action Prior to Issuing the Policy and Agreed that it Was Not a Claim</u>

Furthermore, UNIC is estopped from asserting the "prior knowledge" exclusion because it issued the policy with full knowledge of the January 2006 communications. UNIC formed its own conclusions regarding whether the communications presented the possibility of a future "claim" and cannot now rewrite history to claim it was unaware. On January 18, 2006, while negotiating to place coverage with UNIC, Cirrus' insurance broker, Bill Hanaway of Health Care Insurers, informed UNIC that,

> We have current loss runs on file that presently show no reported claims. However, Cirrus has just been notified as of 1/6/06 by counsel of a hospital to warn that they may be contacted by a plaintiff's attorney, presently suing the hospital because one of the nurses providing treatment was an employee of Cirrus being staffed to the hospital. The hospital's attorney advised that even if the plaintiff doesn't intend on going after Cirrus, they may at least want to subpoena and depose the nurse. We have a copy of this letter and the complaint for wrongful death if you need to review. (JSUF 13, Ex. K)

Therefore, when UNIC issued its policy to Cirrus it had actual knowledge of everything Cirrus knew about the Tracy Action and Skrak's speculation of what the Tracy Action plaintiffs may or may not do in the future. By issuing a policy with full knowledge of these representations, UNIC expressly acquiesced to Hanaway's statement that no claim had been made against Cirrus, and UNIC cannot now rewrite history and claim otherwise.

An insurer may lose a contractual right by estoppel through conduct by the insurer that reasonably causes an insured to rely to its detriment. Croskey, Cal. Prac. Guide: Insurance Litigation, § 6:147 (The Rutter Group 2008). An insurer may be estopped to assert a policy right or defense where, by words or conduct, the insurer has caused the insured reasonably to change its position to its detriment. See Ca Evid § 623; Chase v. Blue Cross of Calif., 42 Cal.App.4th 1142, 1157 (Cal.App. 1996). An insurer may be estopped to deny that coverage exists where the insurer's conduct has caused either the insured to reasonably believe that the insurer was providing coverage or the insured to rely detrimentally on such conduct. Westoil Terminals Co., Inc. v. Industrial Indem. Co., 110 Cal.App.4th 139, 152 (Cal. App. 2003). In order to establish estoppel, the insured does not need to prove that the insurer intended to mislead the insured as long as the insured reasonably relied upon

10

the insurer's action to it detriment. Chase v. Blue Cross of Calif., supra, 42 Cal.App.4th at 1157. UNIC's acceptance of Hanaway's information induced Cirrus to enter into the insurance contract and Cirrus reasonably relied on the disclosure as sufficient to establish that it was not aware of a claim, as stated by Hanaway. UNIC issued its policy with full knowledge of the situation and assumed responsibility that the acts or events Hanaway communicated may or may not later result in a claim during the UNIC policy period – the exact purpose of claims-made coverage. This same knowledge by UNIC bas any effort to claim that Cirrus did not "report" any event fully and accurately, refuting any effort to preclude coverage for such a claimed failure.

### III.  CONCLUSION

UNIC's motion for summary judgment is founded on the incorrect characterization of Skrak's January 4, 2006 letter as a "claim." According to California case law and the terms of both the Interstate and UNIC policies, the letter cannot constitute a claim because it is second-hand, vague hearsay and amounts to no more than rumor. The original *Tracy* complaint is also not a claim because it did not "name" Cirrus as a defendant. UNIC also had actual notice of the pending *Tracy* Action and issued the policy regardless, without calling the insured's attention to its intent to exclude subsequent claims from coverage. The claim made against Cirrus was made during the United National policy period; accordingly, Interstate requests that the Court deny United National's motion for summary judgment.

DATED: 8/4/08

HINSHAW & CULBERTSON LLP

CHRISTOPHER J. BORDERS
CASEY A. HATTON
Attorneys for Plaintiff and Counter-Defendants
INTERSTATE FIRE & CASUALTY COMPANY

11

Interstate Fire & Casualty Company's Opposition To United National's
Motion For Summary Judgment, Case No. CV 07-04943
2973775V1 879609